**STATE of Ohio ex rel. FERN, Appellee,**

v.

**CITY OF CINCINNATI et al., Appellants.**

[Cite as *State ex rel. Fern v. Cincinnati,* 161 Ohio App.3d 804, 2005-Ohio-3168.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040570.

Decided June 24, 2005.

Gary R. Lewis and Gary R. Lewis Co., L.P.A., for appellee.

Julie McNeil, Cincinnati City Solicitor, and Richard Ganulin, Assistant City Solicitor, for appellants.

---

MARK P. PAINTER, Presiding Judge.

{¶ 1} Defendants-appellants, the city of Cincinnati, Cincinnati City Manager Valerie Lemmie, and the Cincinnati Civil Service Commission (collectively, "the city"), appeal the trial court's grant of summary judgment in favor of plaintiff-appellee Michael Fern. We reverse.

{¶ 2} Fern, a Cincinnati police sergeant, took a promotional exam for Cincinnati Police lieutenant. After receiving the results, Fern challenged the grading of the exam. The Civil Service Commission refused Fern's request for a hearing,

stating that under this court's decision in *Steers v. Cincinnati*,[1] challenges to specific exam questions by candidates were not permitted. Fern then filed an original action for a writ of mandamus and also appealed the commission's ruling to the common pleas court. The trial court granted summary judgment to Fern and retroactively promoted him to police lieutenant.

{¶ 3} We agree with the trial court that *Steers* does not control the outcome of this case. Furthermore, we hold that *Steers* is no longer good law and overrule it. We hold that the Civil Service Commission can and should address the merits of a challenge by a police examinee to a police promotional exam. But because it is the commission's role to address such challenges, and because the trial court did not have before it the complete examinations of all applicants who took the promotional exam with Fern, we reverse the trial court's order granting summary judgment.

{¶ 4} We remand the case to the Civil Service Commission for it to consider the merits of Fern's challenge of two specific questions on the exam. And should the commission makes any changes to the answer key for the exam, we order the commission to regrade all examinees' scores and to produce a new promotion list that reflects the changes for all examinees.

## I. Disputed Answers

{¶ 5} In 2003, Fern, a Cincinnati police sergeant, took the promotional exam for the position of lieutenant, along with at least 45 other examinees. The exam was administered and graded by the Cincinnati Civil Service Commission. The resulting promotional eligibility list showed that Fern had placed ninth on the exam.

{¶ 6} After reviewing his examination and answer key, Fern told the commission that he believed his test had been inaccurately graded. Specifically, Fern challenged the commission's answers for five exam questions.

{¶ 7} The commission told Fern that his test results would not be changed, so Fern filed an appeal with the commission. Rather than holding a hearing, the commission simply informed Fern that, under the *Steers* case, challenges to specific exam questions by candidates were not permitted. Believing that it lacked jurisdiction to consider the appeal, the commission simply denied it.

{¶ 8} Fern appealed the commission's decision to the common pleas court. Unsure of whether the commission's decision was a final, appealable order, Fern also filed an original action for a writ of mandamus in the common pleas court.

---

1. *Steers v. Cincinnati* (1992), 78 Ohio App.3d 437, 605 N.E.2d 400.

{¶ 9} At this point, despite its assertion that, under *Steers*, it could not consider any challenges to specific exam questions, the commission did just that. Margaret Key, a senior human-resource analyst employed in the commission's human-resources department, reviewed the five questions in dispute. She determined that for two questions, two answers could be correct and gave Fern credit for two additional correct responses. Upon further review, Key determined that a third question in dispute also had two correct answers. Therefore, the commission gave Fern credit for three of the five disputed questions.

{¶ 10} In an affidavit, Key asserted that she regraded the promotional exam for all examinees, taking into account the multiple correct answers on the three questions. Key determined that after the changes, Fern would have ranked fifth on the promotion-eligibility list. Because only four sergeants were promoted from this particular eligibility list before its expiration, the commission determined that Fern still did not qualify for promotion.

{¶ 11} At the hearing on both parties' summary-judgment motions, the trial court apparently determined that *Steers* did not control the outcome and that *Steers* did not prevent the city from addressing Fern's challenge to the exam. The bulk of the hearing was spent discussing the merits of the two remaining disputed questions.

{¶ 12} Fern asserted that a finding that he had either one of the two disputed questions correct would make him eligible for promotion. The city disagreed with that assertion, arguing that Fern's calculations selectively adjusted his own score without regrading the exam for all examinees. The city urged the court to remand the case to the commission to allow it to consider the merits of Fern's challenge and to regrade the exams for all examinees should any further changes be made.

{¶ 13} Stating that it would be a "waste of time" to remand the case to the commission, the trial court agreed with Fern that one of the remaining disputed questions was unclear. The court then granted Fern's summary-judgment motion and promoted him to police lieutenant, retroactively and with full back pay.

## II. STEERS

{¶ 14} When Fern first challenged his grade on the promotional exam, the city's position was that under *Steers*, challenges to specific exam questions by candidates were not permitted. *Steers* is a 1992 decision by this court that, upon examination, is no longer good law.

{¶ 15} *Steers* involved the Cincinnati Police promotional exam for lieutenant given in 1987. After administering the exam, the commission conducted hear-

ings, referred to as "gripe sessions," that allowed examinees the opportunity to voice their protests about the examination. As a result of these hearings, the commission made various changes to the examination, including the deletion of 20 questions and the allowance of multiple answers to three other questions.[2]

{¶ 16} Daniel Steers, an examinee, saw the commission's changes reduce his standing on the promotion-eligibility list from first or second to 15th place. Steers sued the city and the commission, arguing that the commission's actions were unconstitutional and unreasonable. Steers sought a declaratory judgment and an order enjoining the appointment of certain police officers. The trial court granted summary judgment for Steers, and this court affirmed.[3]

{¶ 17} In *Steers*, we began our analysis by noting that the Ohio statutes pertaining to the civil service controlled the powers of the commission unless the city's charter provided otherwise.[4] For that assertion, we relied on the Ohio Supreme Court's discussion in *State ex rel. Bardo v. Lyndhurst*.[5]

{¶ 18} In *Bardo*, the Ohio Supreme Court stated the general rule that "in matters of local self-government, if there is a conflict between a charter provision and a statute, the charter provision prevails."[6] The *Bardo* court then refined the general rule, stating, "Although the Constitution gives municipalities the authority to adopt home rule, local self-government, the exercise of those powers by the adoption of a charter should clearly and expressly state the areas where the municipality intends to supersede and override general state statutes. Accordingly, we hold that express charter language is required to enable a municipality to exercise local self-government powers in a manner contrary to state civil service statutes."[7]

{¶ 19} In *Steers*, we discussed that the commission had promulgated Section 6, Rule XI, which set forth procedures for objecting to promotional examinations administered to the police and fire departments. We then noted that R.C. 124.45, which pertains to promotional exams for firefighters, provided that examinees could protest the grading of their exams within five days, while R.C. 124.44, pertaining to police-officer promotional exams, had no corresponding provision

---

**2.** *Steers v. Cincinnati* (Sept. 18, 1996), 1st Dist. No. C–940946, 1996 WL 526661.

**3.** *Steers*, 78 Ohio App.3d 437, 605 N.E.2d 400.

**4.** Id. at 439, 605 N.E.2d 400.

**5.** *State ex rel. Bardo v. Lyndhurst* (1988), 37 Ohio St.3d 106, 109, 524 N.E.2d 447.

**6.** Id. at 109–110, 524 N.E.2d 447.

**7.** Id. at 110, 524 N.E.2d 447.

concerning an examinee's ability to protest the police exam. We then stated that the city and the commission had failed to cite any authority within the city's charter that authorized the commission to adopt Rule XI.

{¶ 20} As a result, the commission rule that detailed how a police officer should challenge his grade on a promotional exam was deemed unconstitutional and apparently struck down in reliance on *Bardo*.[8] The trial court later ordered the commission to restore 17 questions to the promotional exam.[9] It also ordered the commission to regrade the exam "based on the original answer grid, without regard for any action taken by the Cincinnati Civil Service Commission as a result of 'gripe sessions,'" and to establish a new promotion-eligibility list.[10]

{¶ 21} Since the *Steers* case, the city's position when faced with a challenge to a police promotional exam from an examinee has been that it is not permitted to consider the challenge for lack of jurisdiction. The result is that even when presented with blatant evidence of errors in the questions or the grading of an exam, the city cannot rectify its mistakes and adjust examinees' scores.

{¶ 22} In this case, the city is put in the unenviable position of relying on *Steers* to prevail, yet practically conceding that *Steers* should be overruled. As the losing party in *Steers*, the city no doubt does not favor the continuation of a decision that has essentially tied its hands in how it can conduct its police promotional exams.

{¶ 23} On the other hand, Fern does not advocate the overruling of *Steers*. He argues instead that *Steers* can be distinguished. Fern contends that *Steers* prohibited only "gripe sessions." He asserts that because he never requested to have any questions removed from the exam, his situation is distinct.

{¶ 24} We think there is no distinction between the regrading of an exam by removing certain questions and the regrading of an exam by allowing multiple answers on certain questions. We agree with the city's interpretation of *Steers*. The original *Steers* decision and the subsequent *Steers* cases (resulting from the significant litigation from the 1987 police promotional exam) made it clear that the city could not change the answers or the grading of a police promotional exam after it released the results. Under *Steers*, the city's attempt to rectify unfairness or errors in the questions and grading of a police promotional exam was struck down, and the city was left without jurisdiction to address future chal-

---

8. *Steers*, 78 Ohio App.3d 437, 439–440, 605 N.E.2d 400.

9. *Steers*, 1st Dist. No. C–940946, 1996 WL 526661.

10. Id.

lenges by examinees to an exam. Of course, it is unfortunate that the exams evidently continue to have unclear or misleading questions.

{¶ 25} For reasons of common sense and fairness, this simply cannot continue to be the law. More important, subsequent Ohio Supreme Court decisions clarify that the drastic remedy of *Steers* is not the correct interpretation of the law.

{¶ 26} The problem with *Steers* is that there was no need for the city charter to specifically authorize the commission to address an examinee's challenge to a police promotional exam. In *Bardo*, the court stated, "[S]ome form of charter authorization is necessary to enable municipalities to adopt ordinances or administrative rules that will *prevail over* statutory provisions *in case of conflict.*" [11] (Emphasis added.) The rule of *Bardo* applies only when there is a conflict between state law and local law.

{¶ 27} In *McArthur v. DeSouza*, decided later in the same year as *Steers*, the Ohio Supreme Court stated that "state law neither authorizes nor prohibits an applicant from contesting his promotional examination grade." [12] The court held that because there was no actual conflict between state law and the local city charter, the local commission had the authority to promulgate a rule that was not inconsistent with state law. [13]

{¶ 28} In this case, we must examine the state law concerning the administration of police promotional exams and the Cincinnati charter to determine whether there is a conflict. If there is not, then the commission rules promulgated on the subject that do not conflict with state law are valid.

{¶ 29} Under R.C. 124.44, promotions within a municipal police department must be made based on performance on a competitive exam. The statute addresses a few specific situations, such as when there are fewer than two persons eligible to compete, when a person's salary has been increased beyond that fixed for a particular rank, and when a vacancy occurs without an existing eligibility list. The statute then states that if there is an eligibility list, the commission should appoint the person with the highest rating. The statute concludes by stating that no credit for seniority is given unless the applicant achieves at least the minimum passing grade on the exam. That is all the statute says.

{¶ 30} The Cincinnati charter states very little about the Civil Service Commission or police promotional exams. In Article II, Section 1, it vests all legislative

---

**11.** *Bardo,* supra, 37 Ohio St.3d at 109, 524 N.E.2d 447.

**12.** *McArthur v. DeSouza* (1992), 65 Ohio St.3d 25, 599 N.E.2d 268, fn. 2.

**13.** Id.

powers in the city council and then states, "The laws of the state of Ohio not inconsistent with this charter, except those declared inoperative by ordinance of the council, shall have the force and effect of ordinances of the city of Cincinnati; but in the event of conflict between any such law and any municipal ordinance or resolution the provisions of the ordinance or resolution shall prevail and control."

{¶ 31} Article V, Section 1 creates the Civil Service Commission. In Section 3, the charter states, "Except as provided in this charter, the council shall have no power to modify the provisions of the laws of the state of Ohio now or hereafter in effect relating to the civil service and civil service commissions." In Section 5, titled "Police Force," it lists the ranks of the members of the police force and discusses the positions of police chief and assistant police chief. It then authorizes the council to establish special positions in the police force as needed. Nothing is stated regarding the administration or grading of promotional exams.

{¶ 32} Clearly, nothing in the charter conflicts with state law. The charter does not attempt to supersede or override state statutes in the area of police promotional exams.

{¶ 33} Under *McArthur*, because there is no conflict between state law and the local city charter, the local commission has the authority to promulgate rules that are not inconsistent with state law. *Steers* looked at it exactly backwards. Instead of looking to the city charter for specific authorization for the commission to correct errors in the police promotional exam, we need to look at the charter only to see whether it conflicts with state law. Because it does not, the commission is free to promulgate rules not inconsistent with state law that allow it to do its job.

{¶ 34} Cincinnati Civil Service Commission Rule 2, Section 4, titled "Powers and Duties of the Commission," states that the commission "is required to administer and enforce the State Civil Service Laws and its own rules which sustain the State Civil Service Laws. As an administrative body, it is responsible for the legal advertising of all entrance and promotional civil service examinations; the conduct and grading of these examinations, the determination of rules and regulations governing examination conduct and other matters covered in the State Civil Service Laws."

{¶ 35} Rule 10, Section 6, titled "Inspection of Examination Papers," states, "After the grading of such examination papers, any participant in the examination who deems his examination papers have been erroneously graded, shall have the right to appeal to the Commission." Similarly, Rule 17, Section 2 states, "An employee may appeal the results of a classification study, rejection of application, or the grading of an examination by filing a notice of appeal with the Civil Service Commission."

{¶ 36} Rule 10, Section 6, concerning the inspection of exam papers, continues with a section designated only for the fire-department promotional exams. It states, "[I]n the case that the Commission finds an error in the rating key or answer, it shall publish a revised rating key or answer. The revised rating key or answer shall then be available to participants subsequent to such determination of error or errors." We believe that this is a sensible rule and that the commission is authorized to make it.

{¶ 37} This distinction in the commission rule between fire- and police-department promotional exams mirrors the same inexplicable distinction made in the state laws, R.C. 124.44 and 124.45. As noted in *Steers*, the two statutes, pertaining to the police and fire department promotional exams respectively, are very similar, but the fire statute has an extra section addressing challenges to the grading of an exam. The fire statute specifically allows the examinee to inspect the exam within five days and to file a protest. The fire statute then states that if the commission finds an error, it should publish a revised rating key and make it available to the participants. The police statute states nothing regarding any protest to the police exam.

{¶ 38} But though the state law does not specifically order the commission to allow police examinees to inspect and protest their exams, lack of an order does not mean they cannot. On the contrary, as the *McArthur* court stated, there is nothing in state law that prohibits a police applicant from contesting his promotional examination grade.

{¶ 39} Therefore, under the general authority given to the commission to administer and grade the promotional exams, and under the commission rules that allow an applicant to appeal the grading of an examination, the commission can and should address challenges made to the exam and correct unfairness and obvious errors in the questions and grading of the exam. The commission's authority in no way conflicts with the authority granted to it by state law. Because there is no inconsistency, the authority is not unconstitutional.

{¶ 40} In *State ex rel. Brenders v. Hall*,[14] decided several years after *Steers*, the Ohio Supreme Court considered a police officer's challenge to a particular question on a police promotional exam. Without any discussion of whether the city charter or local commission rules allowed the officer to challenge the exam results, the court considered the merits of the officer's argument.

{¶ 41} The officer argued that the particular question lacked objective support and was inconsistent with the assigned study materials, making the entire exam

---

14. *State ex rel. Brenders v. Hall* (1995), 71 Ohio St.3d 632, 646 N.E.2d 822.

not "competitive," in violation of the Ohio Constitution and several Ohio statutes. The court discussed what was meant by "competitive exam."

{¶ 42} The court then decided that "the administration of competitive examinations is a primary function of municipal civil service commissions."[15] Based on this holding, the court held that though "question 11 of the Brook Park police lieutenant promotional examination is perhaps not a paragon of civil service test drafting," it should defer to the commission's determination of the correct response to the question.[16] The court concluded that one possibly unclear question out of 145 questions did not make the exam uncompetitive.

{¶ 43} We emphasize that the court did not even question the commission's authority to change the exam results. The court made it clear that the commission's decision was reviewable—under an abuse-of-discretion standard— but no mention was made of the need for specific charter authorization of local commission rules to address challenges to a police promotional exam.

{¶ 44} We favor the simple reasoning of a 1977 case from the Eighth Appellate District, *Aldrich v. Brecksville*.[17] In *Aldrich*, Aldrich and one other person took the promotional exam for Police Chief of Brecksville, Ohio. After the two received identical scores, Aldrich disputed five exam questions, alleging that the answer key was incorrect.

{¶ 45} The Brecksville Civil Service Commission disallowed Aldrich's protest of four of the questions and removed one question from consideration, finding that it was "unclear," "ambiguous," or "tricky."[18] Aldrich appealed. The trial court ordered the commission to reinstate the withdrawn question and to give Aldrich full credit for the correct answer, resulting in Aldrich obtaining the highest rating on the examination.

{¶ 46} On appeal, the Eighth Appellate District affirmed. The court stated, "A decision to change the test questions afterwards is a matter within the discretion of a civil service commission but that discretion may not be exercised arbitrarily, capriciously, [or] unreasonably * * *. For example, a question may be removed if it is so ambiguous as to render it meaningless or unfair."[19]

---

**15.** Id. at 636, 646 N.E.2d 822.

**16.** Id.

**17.** *Aldrich v. Brecksville* (Mar. 10, 1977), 8th Dist. No. 35678, 1977 WL 201246.

**18.** Id.

**19.** Id.

{¶ 47} The court concluded that it had reviewed the commission's ruling under R.C. Chapter 2506, which allows for appeals from administrative hearings.[20] The court did not examine the Brecksville city charter for specific authorization of the commission to adjust the exam results. The court held that the commission had the authority to correct a test that was not administered correctly or fairly but that the commission's decision was subject to appellate review under an abuse-of-discretion standard.[21]

{¶ 48} With *Steers* overruled, *Aldrich* demonstrates the correct procedure for a challenge by a police examinee to a promotional exam. By overruling *Steers,* we also overrule the city's first assignment of error. We now turn to other issues in Fern's case.

### III. DIRECT APPEAL WAS CORRECT

{¶ 49} Because, under *Steers,* the city lacked jurisdiction to consider Fern's challenge to the promotional exam, when Fern filed an appeal with the commission, the commission simply denied it. The commission did not hold a hearing or allow any evidence to be presented.

{¶ 50} Fern appealed the commission's decision to the trial court, but the city argued that Fern lacked a final, appealable order from which to appeal. The city contended that because there had been no administrative quasi-judicial hearing, the trial court lacked jurisdiction over Fern's appeal. That is not so.

{¶ 51} To be appealable under R.C. 2506.01, an administrative decision must be rendered in a quasi-judicial proceeding.[22] The earmarks of a quasi-judicial proceeding include requirements of notice, a hearing, and an opportunity to introduce evidence.[23] "Whether there is an adjudication depends not upon what the administrative agency actually did, but rather upon what the administrative agency should have done. Where the administrative agency should have given notice, conducted a hearing and afforded the parties an opportunity to be heard and to introduce evidence, the order is the result of an adjudication even if the administrative agency fails to afford such notice and hearing." [24]

20. Id.

21. R.C. 2506.04.

22. See *M.J. Kelley Co. v. Cleveland* (1972), 32 Ohio St.2d 150, 61 O.O.2d 394, 290 N.E.2d 562, paragraph one of the syllabus; *McArthur,* supra, 65 Ohio St.3d at 28, 599 N.E.2d 268.

23. See *M.J. Kelley Co.,* supra, at paragraph two of the syllabus; *Lakota Local School Dist. Bd. of Edn. v. Brickner* (1996), 108 Ohio App.3d 637, 644, 671 N.E.2d 578.

24. *In re Howard* (1991), 73 Ohio App.3d 717, 719, 598 N.E.2d 165.

{¶ 52} Cincinnati Civil Service Commission Rule 17 concerns appeals to the commission. Section 3 states that written notice should be given to the parties 30 days before their hearing. The parties must notify the commission of potential witnesses. Section 5 states that the commission should hear evidence upon the charges and outlines the order of the presentation of evidence.

{¶ 53} The commission rules required the commission to conduct a quasi-judicial hearing for Fern's appeal. Its failure to hold a hearing did not mean that the commission's decision was not subject to appellate review. When the commission denied Fern's appeal, the decision was a final, appealable order from a quasi-judicial hearing.

{¶ 54} Therefore, Fern properly appealed the commission's decision to the trial court under R.C. Chapter 2506. We understand why, in an abundance of caution, Fern also sought a writ of mandamus in the trial court. But the writ was unnecessary and could not have been issued because Fern had an adequate remedy at law.[25]

{¶ 55} While the trial court's decision was not explicit, it apparently properly reviewed the commission's decision under R.C. Chapter 2506. On appeal to this court, we must determine whether, as a matter of law, the trial court's decision was supported by a preponderance of reliable, probative, and substantial evidence.[26]

### IV. Trial Court's Decision

{¶ 56} The trial court correctly determined that *Steers* should not have denied Fern's ability to challenge questions on the promotional exam. The trial court then discussed the merits of the two disputed questions and ruled in Fern's favor, ordering his promotion to lieutenant. For several reasons, we conclude that the trial court should have instead remanded the case to the commission for it to determine the merit of Fern's challenges and to regrade the examination for all examinees, if necessary.

{¶ 57} First, the trial court mistakenly believed that a finding that Fern had answered one more question correctly would sufficiently resolve the case. At oral argument, Fern's counsel read to the court the first disputed question and then summarized the other disputed question. The court then asked, "What one of the two questions would give him a promotion?" Fern's counsel responded

---

25. See *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 29, 6 OBR 50, 451 N.E.2d 225.

26. See *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848.

that if Fern received a correct answer for either question, he would be entitled to a promotion.

{¶ 58} The court then asked for argument from the city. The court became frustrated with the city's defense of *Steers* and stated directly to Fern, "Why would you want to be a policeman? The City Council doesn't back you up and the City completely mistreats you. Messes up on their exam and doesn't rectify it."

{¶ 59} The court then discussed with the city the first disputed question. The city argued that a word missing from the question was unnecessary because it was obvious what the missing word was. The court responded, "You can't do that. You can't do that. You can't say that."

{¶ 60} The city then argued that Fern wanted to selectively adjust his own score without a regrading of the exam for all examinees. The city argued that the case should be remanded to the commission for it to regrade all the exams, contending that it would not be fair for Fern to benefit from a changed answer, while other examinees who answered similarly would not. The trial court agreed that that would not be fair.

{¶ 61} The court then stated no fewer than five separate times that remanding the case would be a "waste of time." The court took the arguments under submission and issued a written decision two weeks later. The decision, without any discussion, granted Fern's summary-judgment motion and ordered that he be promoted retroactively.

{¶ 62} It can be gleaned from the transcript that the trial court found that the first disputed question was unclear and that Fern should have received credit for it. But the record before the trial court did not contain the other examinees' responses on that question. It is clear that the trial court did not have the ability from the record to recalculate all examinees' scores after changing the answer, nor was it able to produce a new promotion-eligibility list. Only the commission could have calculated the effect on the rankings when the answer key was changed. And the commission never made new calculations based on either the fourth or fifth disputed question being changed.

{¶ 63} Because the trial court did not have all the examinees' tests and had no way to know how changing the answer key would affect the overall ranking of the examinees, we conclude that the trial court could not make a final determination in the case.

{¶ 64} For example, Fern had to have placed among the top four scorers on the exam to get promoted. But there is nothing in the record, beyond Fern's assertion, that proves that Fern would have been among the highest four scorers on the exam if he were credited with one more correct answer. The commission

.simply never did the math. It is possible that even if Fern is credited with one or two more correct responses, the four officers ranking ahead of him would also be credited with those same correct responses, resulting in no advancement for Fern on the promotion-eligibility list.

{¶ 65} And even if Fern does end up among the four highest scorers, it is possible that another officer on the list would also have placed among the top four scorers if credited with one or two additional correct responses. If so, that officer should also have been promoted. Even the trial court acknowledged that it would not be fair to allow only Fern, and no other examinee, to benefit from a change in the answer key.

{¶ 66} But the crux of the matter is that it is really not the trial court's role— or ours—to determine the correct answers to a police promotion-examination or to calculate what officers are entitled to promotion. That is exactly the role of the Civil Service Commission. And due to the confusion from *Steers,* the commission never fulfilled its role. Because of *Steers,* Fern never received a quasi-judicial hearing before the commission on the merits of his challenges to the exam.

{¶ 67} The Ohio Supreme Court stated in *Brenders,* "Courts should not be 'drawn into preparing, revising and correcting questions in Civil Service examinations, supervising the examinations, and finally rating the papers.' " [27] The court further held, "State courts will generally not intervene in municipal civil service commission matters in the absence of an abuse of discretion," emphasizing that a court "may not substitute its opinion for that of the [commission]." [28]

{¶ 68} But in this case, there was no opinion by the commission in the first place. There was no opinion for which a court could substitute its judgment. The city has argued since the beginning that, under *Steers,* it was not obligated to even consider Fern's protest and has never held a full hearing on his claim. And while the city submitted Margaret Key's affidavit, it represented only one civil service employee's reevaluation of the test answers. That cannot compare to a full hearing before the commission in which Fern would be entitled to present evidence and to argue his point of view.

{¶ 69} We must remand this case to allow the commission to do its job, as it should have done in the first place, if not for *Steers.*

{¶ 70} And to be fair (and to prevent possible future litigation by other police examinees), the issue in this case is not only to determine whether Fern is

---

**27.** *State ex rel. Brenders,* supra, 71 Ohio St.3d at 635, 646 N.E.2d 822, quoting *Blumenthal v. Morton* (1948), 273 A.D. 497, 503, 78 N.Y.S.2d 302.

**28.** Id. at 636, 646 N.E.2d 822.

entitled to a promotion. The city must reach a fair and final scoring of the exam and grade the exam for all examinees if any changes are made to the answer key. Any examinee who scores among the top four on the exam should be entitled to promotion. (We note that the original four highest scorers who have already been promoted to lieutenant do not face possible demotion, as their rights have vested in their new positions.)[29]

{¶ 71} Therefore, we hold that the trial court's decision was not supported by a preponderance of reliable evidence and sustain the city's second and third assignments of error. We reverse that decision and remand this case to the commission to hold a full hearing on the merits of the two disputed questions only. We caution the commission not to focus on Fern's role in forcing the reevaluation of the exam, but encourage the commission to seek a fair and final answer key and promotion-eligibility list for all examinees.

■ {¶ 72} It is the commission's role to determine the substantive issues for a civil-service-promotion exam. Overruling *Steers* and remanding this case allow the commission to do its job.

> Judgment reversed
> and cause remanded.

SUNDERMANN and HENDON, JJ., concur.

---

29. See *Steers v. Cincinnati* (Sept. 18, 1996), 1st Dist. No. C–940946, 1996 WL 526661; *State ex rel. Habe v. S. Euclid* (1990), 56 Ohio St.3d 117, 119, 564 N.E.2d 483.