KLATT, J.
{¶ 1} Appellant, James Hassey, appeals a judgment of the Franklin County Court of Common Pleas affirming the order of the Columbus Civil Service Commission that affirmed the termination of Hassey's employment with the Columbus Department of Public Safety, Division of Police ("Division"). For the following reasons, we affirm the trial court's judgment.
{¶ 2} From July 2002 to June 2014, the Division employed Hassey as a police officer. In September 2013, Hassey's ex-girlfriend, Elde Shepherd, filed a citizen's complaint with the Division's Internal Affairs Bureau ("IAB") regarding Hassey. Shepherd alleged that Hassey engaged in various misconduct, including regularly smoking marijuana. David M. Barrowman, a sergeant with IAB, initiated an investigation into Shepherd's allegations.
{¶ 3} On the morning of September 26, 2013, Barrowman notified Hassey of IAB's investigation and ordered Hassey to report for an IAB interview the next morning. That evening, Hassey called his supervisor and said that he planned to admit to using marijuana during his IAB interview. The Division immediately relieved Hassey from his regular assignment and ordered Hassey to contact the employee assistance program.
{¶ 4} Barrowman interviewed Hassey the next day. During that interview, Hassey stated that he had smoked marijuana approximately three to four times a month for the previous three to five years. Hassey admitted to last smoking marijuana two days before his interview. Hassey's sister periodically gave Hassey small amounts of marijuana. Hassey claimed that he only smoked one or two puffs at a time, and that it took him a week to two weeks to finish a joint. Occasionally, Hassey shared the marijuana he received from his sister with Shepherd.
{¶ 5} Barrowman asked Hassey if he would volunteer to take a drug test. Hassey declined on the advice of his attorney. However, Hassey conceded that if he took the test, the results would be positive for marijuana.
{¶ 6} Based on Hassey's admissions, the Division charged Hassey with violation of Rules of Conduct 1.36 and 1.42(C). Rule 1.36, entitled "Unbecoming Conduct," provides that:
Division personnel shall conduct themselves at all times, both on and off duty, in such a manner as to reflect favorably on the Division. Unbecoming conduct is behavior that implicitly or explicitly dishonors the Division and/or its members, reflects discredit upon the individual as a member of the Division, or impairs the operation or efficiency of the Division or the individual. This includes, but is not limited to, derogatory, discriminatory, or harassing comments, gestures, or insinuations.
(Hassey Ex. 12 at 8.) Rule 1.42(C) states that "Division personnel shall not consume, possess, or purchase illicit/illegal drugs except as required in the line of duty." (Hassey Ex. 12 at 9.) The Division asserted that Hassey violated Rules 1.36 and 1.42(C) by *1257 possessing and using marijuana, as well as supplying marijuana to Shepherd for her use.
{¶ 7} On March 20, 2014, the chief of police conducted a disciplinary conference regarding the charges against Hassey. During the conference, Hassey acknowledged that he had violated the Rules of Conduct as charged. Hassey, however, submitted evidence showing that he had undergone an addiction assessment and completed the three educational classes recommended as a result of the assessment. Hassey also assured the chief that he no longer used marijuana.
{¶ 8} Hassey's union representative asked the chief to follow Section 17.9 of the collective bargaining agreement between the city of Columbus and the Fraternal Order of Police, Capital City Lodge No. 9, when disciplining Hassey.[1] That section states:
The City will not discharge a member who tests positive a first time (unless the member tests positive for use of a controlled substance, the use or possession of which in any amount would constitute a felony), provided the member fulfills the obligations set forth in (A) through (F) below. * * * A member * * * who tests positive for any other prohibited substance [other than alcohol] for the first time and who cooperates in fulfilling the obligations set forth in (A) through (F) below may be suspended. The length of such suspension shall be determined on a case-by-case basis, but shall not exceed twenty-four (24) duty hours. This limitation on discipline shall not limit the City in imposing discipline up to and including termination, for gross misconduct that may be coincident with a member's improper drug or alcohol use. A member who tests positive the first time * * * must do the following in order to take advantage of the foregoing limitations on discipline:
(A) Cooperate in an evaluation for chemical dependency by an individual qualified under 49 C.F.R. Part 382 to be a Substance Abuse Professional and provide the City with a copy of the evaluation;
(B) Successfully complete all counseling, treatment or after-care (of up to 12 months) recommended by the Substance Abuse Professional;
(C) Discontinue (and not resume) the use of illegal drugs and misuse of alcohol;
(D) Agree to authorize all persons involved in evaluating, counseling, diagnosing and treating the member, to disclose to the personnel specified in Section 17.13, the member's evaluation, progress, cooperation, drug and alcohol use and successful completion or non-completion of counseling and treatment, and any threat to property or safety involved in the member performing job duties or returning to active duty;
(E) Agree to a return to duty test (which must be negative before the member will be released to return to his/her regular assignment) and submit to follow-up testing, at times determined by the City, up to seven (7) times in a twenty-four (24) month period for violations involving illegal drugs * * * ; and
(F) Agree that during or after this follow-up testing period in (E) above, if the member tests positive again or otherwise violates this Article, the member may properly be terminated.
(Hassey Ex. 1 at 64-65.) Hassey's representative told the chief that Hassey had *1258 complied with the (A) through (F) requirements within his control, and he was willing perform the remainder of the requirements.
{¶ 9} Hassey's union representative conceded that Section 17.9 was not directly applicable because Hassey had not tested positive for marijuana. However, the representative asserted that Hassey's admission to marijuana use was analogous to testing positive and, consequently, the discipline imposed for Hassey's misconduct should not exceed a 24-hour suspension.
{¶ 10} After the disciplinary conference, the chief of police found that the facts uncovered during the IAB investigation and the statements Hassey made during the conference sustained the violations of Rules 1.36 and 1.42(C). The chief recommended that the director of public safety suspend Hassey for 240 working hours or 30 working days and terminate Hassey's employment.
{¶ 11} Hassey next appeared at a hearing before the director of public safety. Again, Hassey admitted to the charges against him. Hassey acknowledged that his behavior warranted discipline, but he asked that the director not discharge him. After considering Hassey's testimony and the evidence revealed by the IAB investigation, the director of public safety upheld the chief of police's decision to sustain the charges against Hassey and the recommendation to terminate Hassey's employment. Hassey's termination became effective on June 11, 2014.
{¶ 12} Hassey appealed the director's decision to the Columbus Civil Service Commission ("Commission"). At the hearing before the Commission, Hassey presented evidence regarding the discipline imposed on four other police officers after each had engaged in drug- or alcohol-related misconduct. Each of the four officers received a suspension, rather than termination. Hassey argued that, in light of the lesser discipline received by the four other officers, the director of public safety had punished him too harshly.
{¶ 13} Hassey also asserted that the director of public safety was required to treat him the same as an officer who tested positive for illegal drugs for the first time. Therefore, according to Hassey, the director of public safety could only suspend him for up to 24 hours as provided in Section 17.9 of the CBA.
{¶ 14} The Commission rejected both of Hassey's arguments. In an order issued February 23, 2015, the Commission affirmed the termination of Hassey's employment.
{¶ 15} Hassey then appealed the Commission's order to the trial court. Hassey raised before the trial court the same arguments he had made to the Commission. In a judgment dated September 12, 2017, the trial court affirmed the Commission's order.
{¶ 16} Hassey now appeals the September 12, 2017 judgment to this court, and he assigns the following errors:
1. The Trial Court erred in finding Appellant's exclusive remedy was to file a grievance pursuant to the grievance Section 17.9 of the CBA by the procedure set forth in Article 12 of the CBA.
2. The Trial Court erred in finding Appellant's conduct was not comparable with four other police officers.
3. The Trial Court failed to find that the Appellant was treated unequally, and thus denied Appellant Constitutional Equal Protection.
4. The Court erred when it found it was without jurisdiction to provide Appellant with a remedy because Appellant's sole remedy was under Section 17.9 of the CBA.
{¶ 17} Hassey appealed the Commission's decision affirming the termination of *1259 his employment to the trial court pursuant to R.C. 2506.01. In such an appeal, the trial court must determine whether the appealed order "is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. The trial court may then "affirm, reverse, vacate, or modify the order * * * or remand the cause" to the Commission "with instructions to enter an order * * * consistent with the findings or opinion" of the trial court. Id.
{¶ 18} The court of appeals' standard of review under R.C. 2506.04 is more limited than the standard the trial court applies. Independence v. Office of the Cuyahoga Cty. Executive , 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 14, 28 N.E.3d 1182. The court of appeals reviews the trial court's judgment only on questions of law and lacks the extensive power granted to the trial court to weigh the evidence. Id. ; Cleveland Clinic Found. v. Bd. of Zoning Appeals , 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 25, 23 N.E.3d 1161. "In sum, the standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance. It permits reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." Cleveland Clinic Found. at ¶ 30.
{¶ 19} We will address Hassey's first and fourth assignments of error together as they raise the same error. By his first and fourth assignments of error, Hassey argues that the trial court erred in concluding that it did not have jurisdiction to apply Section 17.9 of the CBA to Hassey. We agree that the trial court erred in its analysis of the jurisdictional issue.
{¶ 20} The trial court exercised jurisdiction over this appeal under R.C. 2506.01(A), which authorizes courts of common pleas to review "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state." This appeal came to the trial court after the Commission affirmed the director of public safety's decision to terminate Hassey's employment. The Commission reviewed Hassey's discharge pursuant to Sections 109 and 149-1 of the Columbus City Charter, which confer jurisdiction on the Commission to hear appeals from police officers who are terminated from employment with the Division. See Columbus City Charter, Section 109 ("Any person in the division of police * * * under the exclusive control of the chief thereof, who is suspended, reduced in rank or dismissed from the department by the director of public safety may appeal from the decision of such officer to the civil service commission * * *."); Columbus City Charter, Section 149-1 ("Except as otherwise provided in this charter any employee of the City of Columbus in the classified service, who is suspended, reduced in rank or compensation or discharged * * * may appeal from such decision or order therefor, to the civil service commission * * *.").
{¶ 21} Based on Sections 109 and 149-1 of the Columbus City Charter and R.C. 2506.01(A), it would seem that the Commission and trial court properly exercised jurisdiction over Hassey's appeal. However, R.C. Chapter 4117, the Public Employees' Collective Bargaining Act, complicates the jurisdictional question. The provisions of R.C. Chapter 4117 prevail over home-rule charters. Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emps., AFL-CIO , 61 Ohio St.3d 658, 662, 576 N.E.2d 745 (1991). Therefore, where a city employee is subject to a collective bargaining agreement, R.C. Chapter 4117-and specifically R.C. 4117.10(A) -tempers the *1260 employee's ability to appeal a discharge under the Columbus City Charter.
{¶ 22} According to R.C. 4117.10(A), a collective bargaining agreement between a public employer and a bargaining unit "governs the wages, hours, and terms and conditions of public employment covered by the agreement." Moreover, R.C. 4117.10(A) states that "[i]f the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure." Therefore, pursuant to R.C. 4117.10(A), a collective bargaining agreement controls all matters related to the terms and conditions of employment. Fischer v. Kent State Univ. , 10th Dist. No. 14AP-789, 2015-Ohio-3569, 41 N.E.3d 840, ¶ 18 ; Cerrone v. Univ. of Toledo , 10th Dist. No. 11AP-573, 2012-Ohio-953, 2012 WL 760856, ¶ 6 ; Gudin v. W. Res. Psych. Hosp. , 10th Dist. No. 00AP-912, 2001 WL 664389 (June 14, 2001) ; Oglesby v. Columbus , 10th Dist. No. 00AP-544, 2001 WL 102257 (Feb. 8, 2001). Additionally, if a collective bargaining agreement provides for a grievance procedure culminating in final and binding arbitration, then that procedure provides the exclusive remedy for violations of an employee's employment rights. Fischer at ¶ 18 ; Cerrone at ¶ 8 ; Ryther v. Gahanna , 10th Dist. No. 04AP-1220, 2005-Ohio-2670, 2005 WL 1274212, ¶ 12 ; Gudin ; Oglesby.
{¶ 23} R.C. 4117.10(A), thus, prevents the dual litigation of employment decisions through both arbitration and a separate appeal to a civil service commission. In re Civ. Serv. Charges Against Piper , 142 Ohio App.3d 765, 772, 757 N.E.2d 3 (2d Dist.2001) ; In re Lemley-Wingo , 4th Dist. No. 1622, 1990 WL 127040 (Aug. 22, 1990). Under R.C. 4117.10(A) :
The enforcement of grievances supersedes civil service appeals. * * * If the grievance arbitration process is binding and final, no appeal can be taken to any body. * * * Other bodies are stripped of legal jurisdiction to hear appeals.
Lemley-Wingo , quoting O'Reilly, Ohio Public Employee Collective Bargaining 173 (1984); accord Mun. Constr. Equip. Operators' Labor Council v. Cleveland , 8th Dist. No. 104114, 2016-Ohio-5934, 71 N.E.3d 655, ¶ 12 (" R.C. 4117.10(A) provides that where a collective bargaining agreement contains a grievance process that includes final binding arbitration, a civil service commission or state personnel board does not have jurisdiction to hear an appeal from that decision.").
{¶ 24} The CBA at issue here addresses disciplinary action, including termination. (Hassey Ex. 1 at Section 10.1.) The CBA also incorporates a grievance procedure that concludes with final and binding arbitration. (City Ex. 1 at Section 12.5(E)(3), Brief of Appellee, City of Columbus, Department of Public Safety, Division of Police on the Applicability of Section 17.9 of the CBA). If we confined our review to those two contractual provisions, we would conclude that Hassey could only contest his discharge through the grievance procedure, and neither the Commission nor the trial court had jurisdiction to consider Hassey's appeal.
{¶ 25} However, the CBA also states that "[n]othing in this Grievance Procedure shall deny members any rights available at law to achieve redress of their legal rights, including the right to appeal to another forum." (City Ex. 1 at Section 12.3, Brief of Appellee, City of Columbus, Department of Public Safety, Division of Police on the Applicability of Section 17.9 of the CBA). As we explained above, Sections 109 and 149-1 of the Columbus City Charter give police officers the right to appeal certain employment decisions, including discharge, to the Commission.
*1261 Consequently, in Section 12.3, the CBA permits a member to pursue an appeal of the termination of his employment under Sections 109 and 149-1 of the Columbus City Charter, despite the existence of final and binding arbitration. The CBA thus contravenes the part of R.C. 4117.10(A) that limits redress of employment decisions to the grievance procedure if that procedure includes final and binding arbitration.
{¶ 26} The question then arises, "Can a term in a collective bargaining agreement override the law?" For the most part, the answer is "yes." R.C. 4117.10(A), which restricts the remedies available for contesting employment decisions, also sets out the relationship between provisions of a collective bargaining agreement and state or local laws. Streetsboro Edn. Assn. v. Streetsboro City School Dist. Bd. of Edn. , 68 Ohio St.3d 288, 291, 626 N.E.2d 110 (1994). Under R.C. 4117.10(A), if a provision of a collective bargaining agreement conflicts with the law, the provision prevails over the law, except for laws specifically enumerated in the statute. Id. ; State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn. , 71 Ohio St.3d 26, 29, 641 N.E.2d 188 (1994).
{¶ 27} The rights to appeal a discharge through the State Personnel Board of Review or a civil service commission are not laws exempted from the bargaining table under R.C. 4117.10(A). Lemley-Wingo. In other words, the statutory or charter-based right to appeal "is a proper subject for a collective bargaining agreement" and "may be either retained or bargained away by the parties." Fields v. Summit Cty. Executive Branch , 83 Ohio App.3d 68, 73, 613 N.E.2d 1093 (9th Dist.1992). Consequently, even if a collective bargaining agreement includes a grievance procedure that culminates in final and binding arbitration, that agreement may allow an employee to pursue remedies provided by law instead of following the grievance procedure. Davis v. Hocking Cty. Sheriff , 76 Ohio App.3d 843, 847-48, 603 N.E.2d 406 (4th Dist.1992). In such a situation, if the employee elects to invoke his statutory or charter-based right to appeal, the administrative entity with the legal authority to hear the appeal possesses the necessary jurisdiction to determine the matter before it. Id. at 848, 603 N.E.2d 406.
{¶ 28} Here, the CBA permitted Hassey to appeal his discharge to the Commission under Sections 109 and 149-1 of the Columbus City Charter. The Commission, therefore, properly exercised jurisdiction over Hassey's appeal. Pursuant to R.C. 2506.01(A), the trial court properly exercised jurisdiction over Hassey's appeal of the Commission's order.
{¶ 29} The trial court recognized that it possessed jurisdiction to determine Hassey's appeal. It, however, refused to consider one issue: whether the city violated Section 17.9 of the CBA. In so doing, the court stated:
Here, the CBA provides for final and binding arbitration of all grievances. Appellant's exclusive remedy, therefore, for the Division's alleged violation of his rights under Section 17.9 of the CBA, was through the CBA's grievance procedure. Appellant, however, did not file a grievance, and he therefore failed to seek the sole remedy available to him. This Court is without jurisdiction to provide that remedy to Appellant.
(Sept. 12, 2017 Jgmt. at 18.)
{¶ 30} As we explained above, the CBA did not limit Hassey's remedy to the grievance procedure. Rather, the CBA permitted Hassey to appeal the termination of his employment to the Commission, and nothing in the CBA restricted the scope of the Commission's jurisdiction on appeal. Consequently, *1262 the Commission (and, on appeal, the trial court) had jurisdiction to enforce Section 17.9 of the CBA and modify Hassey's discipline in accordance with that section.
{¶ 31} Our conclusion in this matter is consistent with prior precedent. In In re Civil Serv. Charges Against Piper , 142 Ohio App.3d 765, 757 N.E.2d 3 (2d Dist.2001), a police officer appealed a 35-day suspension to a civil service commission, which upheld the suspension. The officer then appealed to the court of common pleas. The police officer argued that the city could not discipline him because it had violated the collective bargaining agreement when it failed to institute disciplinary proceedings against him within the time period specified in the agreement. The trial court concluded that it lacked jurisdiction to consider the timing provision in the collective bargaining agreement, and it affirmed the civil service commission's decision. On appeal, the court of appeals held that, where an employee pursues an administrative appeal instead of a grievance, " R.C. 4117.10(A) d[oes] not prohibit [a civil service commission's] jurisdiction to interpret the labor contract in the context of the disciplinary action under consideration." In re Civil Serv. Charges Against Piper at 772, 757 N.E.2d 3. The court of appeals, thus, found that the jurisdiction to review the disciplinary action inherently included the authority to consider the timeliness issue. Id.
{¶ 32} Here, like in In re Civil Serv. Charges Against Piper , the Commission and the trial court had the jurisdiction to review all issues relevant to the discipline imposed, including whether the city complied with the CBA. Accordingly, the trial court erred in concluding that it lacked jurisdiction to consider Hassey's argument that Section 17.9 applied to him and limited the discipline the director of public safety could impose on him.
{¶ 33} Although we have found error, our review is not complete. A reviewing court will not reverse a correct judgment merely because a trial court relied on an erroneous reason as the basis for its determination. Joyce v. Gen. Motors Corp. , 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990) ; Reid v. Plainsboro Partners, III , 10th Dist. No. 09AP-442, 2010-Ohio-4373, 2010 WL 3610931, ¶ 20. In other words, "when a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial." Reynolds v. Budzik , 134 Ohio App.3d 844, 846, fn. 3, 732 N.E.2d 485 (6th Dist.1999).
{¶ 34} Here, in addition to advancing the jurisdictional argument, the city argues that Section 17.9 of the CBA simply does not apply to Hassey. We agree.
{¶ 35} "A collective bargaining agreement is a contract, and 'the overriding concern of any court when construing a contract is to ascertain and effectuate the intent of the parties.' " State ex rel. Kabert v. Shaker Heights City School Bd. of Edn. , 78 Ohio St.3d 37, 44, 676 N.E.2d 101 (1997), quoting TRINOVA Corp. v. Pilkington Bros., P.L.C. , 70 Ohio St.3d 271, 276, 638 N.E.2d 572 (1994). The intent of the parties is presumed to reside in the language the parties chose to employ in the contract. Kelly v. Med. Life Ins. Co. , 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus.
{¶ 36} In Section 17.9, the city promised "not [to] discharge a member who tests positive a first time" and, instead, to discipline a member "who tests positive for [a] prohibited substance for the first time" with a suspension of up to 24 hours if the member fulfills the listed obligations.
*1263 (Hassey Ex. 1 at 64-65.) Thus, by its plain language, Section 17.9 only restricts the city's disciplinary options to a 24-hour or shorter suspension when a police officer tests positive for a prohibited substance for the first time. Hassey did not test positive; he instead admitted to long-term marijuana use. Section 17.9, therefore, does not apply to Hassey and he is not entitled to its protection.
{¶ 37} Indeed, on appeal, Hassey concedes that he has no remedy under Section 17.9 because he never tested positive. Hassey, instead, maintains that the trial court should have considered Section 17.9 as evidence of the appropriate level of discipline for his misconduct. We, however, will not consider that argument because Hassey waived it when he did not raise it before the trial court. See Columbus City School Bd. of Edn. v. Franklin Cty. Bd. of Revision , 144 Ohio St.3d 549, 2015-Ohio-4837, 45 N.E.3d 968, ¶ 14, quoting MacConnell v. Ohio Dept. of Commerce , 10th Dist. No. 04AP-433, 2005-Ohio-1960, 2005 WL 995590, ¶ 21 (" 'Generally, a party waives the right to appeal an issue that could have been but was not raised in earlier proceedings.' "). In his trial court briefing, Hassey advocated the more extreme position that he was "entitled to the protection of the CBA at Section 17.9," and the trial court had an obligation:
to identify with clarity that Columbus [p]olice officers who make admissions to first[-]time use of [prohibited] substances * * * and who otherwise meet the criteria of Section 17.9 need not have undergone testing to be afforded the protection and treatment intended by that section.
(June 8, 2015 Brief of Appellant at 62, 63.) Under the plain language of Section 17.9, that argument fails. Accordingly, we sustain Hassey's first and fourth assignments of error, but we conclude that our ruling on those assignments does not justify reversal of the trial court's judgment.
{¶ 38} By Hassey's second assignment of error, he argues that the trial court erred in finding his misconduct distinguishable from the misconduct of four other officers. Hassey contends that, given the similarity of the misconduct at issue, discharge was too harsh a punishment when compared to the lesser discipline received by the four other officers. We agree with the trial court that the significant differences between Hassey's and the other officers' misconduct preclude any comparison between the discipline meted out to the other officers and the discipline Hassey received.
{¶ 39} Before the Commission, Hassey presented evidence regarding four other officers: Nicole Prysock, Ralph Taylor, Andrew Radich, and Joshua Wagner. Prysock was disciplined with a 160-hour suspension because she returned to a high school student a substance believed to be marijuana that she had seized earlier in the day. Taylor received a 64-hour suspension for purchasing and smoking marijuana while off duty. Radich was disciplined with a 56-hour suspension for driving under the influence of alcohol with a loaded handgun in his automobile. The chief of police recommended that Wagner receive a 120-hour suspension for driving under the influence of alcohol with a loaded handgun in his automobile. Wagner, however, retired before the imposition of that discipline.
{¶ 40} After reviewing each of the four officers' misconduct, the trial court concluded that none of the four officers engaged in misconduct similar to Hassey's misconduct. We agree. As the trial court pointed out, each officer violated the Rules of Conduct on one occasion. No evidence established that any of the officers repeatedly violated the Rules of Conduct over a course of years like Hassey. Even *1264 more fundamentally, none of the officers did anything like what Hassey did, i.e., none used an illegal substance for years and shared that illegal substance with another.
{¶ 41} On appeal, Hassey argues that, in many respects, his misconduct is less serious than that engaged in by the four other officers. However, this argument only emphasizes the difference between the officers and Hassey and, thus, actually refutes the assertion in the assignment of error that Hassey's misconduct is comparable to the misconduct of the other officers. Hassey also argues that, like him, the other officers exposed the Division to potential negative publicity. While this is true, it does not make the nature of the officers' misconduct the same as Hassey's.
{¶ 42} In sum, we reject Hassey's contention that the trial court erred when it concluded that Hassey was not treated differently from other, similarly situated officers. Accordingly, we overrule Hassey's second assignment of error.
{¶ 43} By Hassey's third assignment of error, he argues that the termination of his employment violated his equal protection rights because he was disciplined more harshly than police officers disciplined pursuant to Section 17.9 of the CBA. Hassey bases this alleged equal protection violation on the "class-of-one" theory. Under that theory, a person may establish an equal protection violation when the state intentionally treats the person differently than those similarly situated without a rational basis for the difference in treatment. Engquist v. Oregon Dept. of Agriculture , 553 U.S. 591, 601, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008).
{¶ 44} Hassey's argument fails for two reasons. First, he did not raise it in the trial court, so it is waived. Columbus City School Bd. of Edn. , 144 Ohio St.3d 549, 2015-Ohio-4837, 45 N.E.3d 968, at ¶ 14. Second, "the class-of-one theory of equal protection has no application in the public employment context." Engquist at 607, 128 S.Ct. 2146. Accordingly, we overrule Hassey's third assignment of error.
{¶ 45} For the foregoing reasons, we overrule Hassey's second and third assignments of error. We sustain Hassey's first and fourth assignments of error but conclude that our ruling on those assignments of error does not warrant reversal of the trial court's judgment. Consequently, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
TYACK and HORTON, JJ., concur.

Hereinafter, we will refer to the collective bargaining agreement at issue in this case as "the CBA." We will use "collective bargaining agreement" when referring to such agreements generally.