[Cite as *State v. Howard*, 2022-Ohio-3739.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 111286 |
| LEONARD HOWARD, | : | |
| Defendant-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 20, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-91-263243-C

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory J. Ochocki, Assistant Prosecuting Attorney, *for appellee.*

Russell S. Bensing, *for appellant.*

SEAN C. GALLAGHER, A.J.:

{¶ 1} Leonard Howard appeals the denial of his successive petition for postconviction relief, in which he raises the same issue that arose in his delayed motion for a new trial filed in 1997 — whether the state was aware of evidence that

would have impeached a witness who later recanted part of his testimony. For the following reasons, we affirm.

{¶ 2} Howard was convicted of aggravated murder, murder, felonious assault, and having a weapon while under disability, along with an attendant firearm specification for the killing of two victims, Mark Marshall and Thomas Ricardo Allen, who were gunned down at a gas station on East 131st Street and Harvard Avenue in the city of Cleveland, and the wounding of a third victim. *State v. Howard*, 8th Dist. Cuyahoga No. 62191, 1993 Ohio App. LEXIS 1977, 1-2 (Apr. 8, 1993). The trial court sentenced Howard to serve an aggregate prison term of life, with the possibility of parole after 59 years.

{¶ 3} The trial transcript is not part of the appellate record. According to the panel reviewing the direct appeal of the convictions, the primary evidence entered against Howard at trial was the testimony of Howard's codefendants, Abraham Douglas, Andre Collier, and Jerrall Collier. *Id.* Thus, the state presented eyewitness testimony from persons who were "with appellant prior to and just after the murders and physical evidence linking appellant to the crimes." *Id.* Although Earl Johnson testified at Howard's trial, Johnson's testimony focused on other acts evidence of an overall plan or scheme. As a sidenote, following the extensive trial testimony, the panel noted that "[i]t was surmised that [Howard] discovered Earl was an eyewitness to the earlier murders at [the gas station]. [Johnson] testified that he happened to be riding as a passenger in a car and saw appellant, along with others, firing at two people." *Id.* at 6.

{¶ 4} In resolving Howard's argument challenging the weight of the evidence in support of the convictions, the panel concluded as follows:

> In this case, there was overwhelming evidence of appellant's guilt. Derrick Jones, an eyewitness, identified appellant shooting Marshall and Allen. Jerrall, a co-conspirator, testified to the events of the murders and implicated appellant. Moreover, Jerrall's testimony was corroborated by White and June. All the testimony was materially consistent and we find no basis, nor has appellant presented one, why we should disbelieve the factfinder's assessment and verdict and reverse his convictions.

*Id.* at 18. Thus, the panel did not discuss Johnson's testimony in any further detail and did not rely on Johnson's testimony in sustaining the conviction.

{¶ 5} Nevertheless, in 1997 Johnson recanted his trial testimony insomuch as he claimed to have witnessed the shooting. He nonetheless maintained his testimony regarding Howard's attempt on his life. Howard filed a delayed motion for a new trial based on the then newly discovered evidence. The transcript of those proceedings was appended to Howard's latest petition for postconviction relief. At that time, Johnson testified that he did not witness the shooting but had simply driven past the aftermath. Importantly, he also claimed to have told several detectives of that fact during the investigation — setting the stage for the *Brady* violation claim.

{¶ 6} Howard's latest petition for postconviction relief once again focuses on the trial testimony of Johnson. In 2019, Howard's family procured the police reports confirming Johnson told detectives about his not witnessing the actual shooting. Howard claims that he was unable to obtain the police report until 2016,

when the Ohio Supreme Court concluded that the investigatory-work-product exception of the Public Records Act under R.C. 149.43(A)(2)(c) did not extend beyond the completion of trial for which the information was gathered. *State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 47; *but see State ex rel. Summers v. Fox*, 163 Ohio St.3d 217, 2020-Ohio-5585, 169 N.E.3d 625, ¶ 47 (when witness statements to law enforcement are prepared for the "sole" purpose of providing the prosecutor the necessary information, the exception to the public records act request for investigatory work product applies). There is no explanation for why Howard waited three additional years to seek the police reports following the Ohio Supreme Court decision.

{¶ 7} The trial court denied the successive petition for postconviction relief, concluding that it lacked jurisdiction to consider the merits of the claim under R.C. 2953.23(A)(1)(b).

{¶ 8} In this appeal, Howard claims that "the trial court erred in imposing an unconstitutional standard in determining the merits of [his] petition for postconviction relief[,]" primarily relying on *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), as applied through *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470. *See also State v. Mack*, 8th Dist. Cuyahoga No. 101261, 2018-Ohio-301, ¶ 30 (applying *Kyles* to the appellate review of a postconviction proceeding under R.C. Chapter 2953). According to Howard, the statutory standard to properly invoke the trial court's continuing jurisdiction to consider a successive or untimely petition for postconviction relief under R.C.

2953.23(A) differs from the standard to review a claim of the deprivation of constitutional rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as announced in *Kyles*.

{¶ 9} *Bethel* provides the procedural framework through which this appeal from the denial of a successive petition for postconviction relief must be analyzed.[1] The withholding of evidence, whether intentional or inadvertent, violates the Fourteenth Amendment if the evidence is either exculpatory or provides impeachment value and is prejudicial to the offender. *Bethel* at ¶ 19, citing *Brady* and *Smith v. Cain*, 565 U.S. 73, 75, 132 S.Ct. 627, 181 L.Ed.2d 571 (2012) (summarizing the three components of "a true *Brady* violation"). "'[F]avorable evidence is material, and constitutional error results from its suppression by the government, "if there is a reasonable probability that, had the evidence been

---

[1] Although Howard claims that the "Ohio post-conviction statute is the only vehicle for addressing a situation where the State has violated a defendant's constitutional rights by failing to disclose exculpatory evidence," Howard has not cited any authority to support such a notion. To the contrary, the *Brady* violation could have been addressed in Howard's 1997 delayed motion for a new trial in which Howard presented evidence that detectives were aware of Johnson's impeachable testimony; although it is recognized that Howard would not have been able to produce the actual police reports at that time, he could have also filed a separate motion for new trial after receiving the police report. *See, e.g., Bethel,* 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 59 (finding the *Brady* violation to be a valid basis supporting a motion for leave to file a delayed motion for a new trial); *State v. Buehner,* 8th Dist. Cuyahoga No. 109699, 2021-Ohio-4435. Importantly, Howard has maintained that his petition for postconviction relief must be analyzed under the statutory framework. App.R. 16(A)(7). His argument will be addressed as presented, but it is noted that in *Bethel*, the Ohio Supreme Court applied the materiality review under the *Brady* violation in considering both the petition for postconviction relief and the motion for leave to file the delayed motion for a new trial. Thus, the outcome hinges on the same analysis regardless of whether the motion is brought under the statutory postconviction proceeding or the Ohio Criminal Rules for a delayed motion for new trial, which does not contain the statutory jurisdictional impediment.

disclosed to the defense, the result of the proceeding would have been different.'"'" *Id.*, quoting *Kyles* at 433 and *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Prejudice, under the *Brady* standard, is demonstrated if "the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.*, citing *Kyles* and *Bagley*.

{¶ 10} In order for an offender to advance a *Brady* violation claim following a conviction under Ohio's postconviction relief statutory structure, the jurisdictional requirements under R.C. 2953.21 must be met. *Id.* at ¶ 20. If the petition is either untimely or a successive petition, such as the petition at issue in this particular appeal, R.C. 2953.23(A) controls. Under that section, in order to invoke the continuing jurisdiction of the trial court in the postconviction proceeding, the offender must demonstrate "(1) that he was 'unavoidably prevented from discovery of the facts' upon which his claim relies and (2) by clear and convincing evidence, that no reasonable factfinder would have found him guilty or eligible for the death sentence but for the constitutional error at trial.'" *Id.*, citing R.C. 2953.23(A)(1) and *State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 36; *see also State v. Jones*, 8th Dist. Cuyahoga No. 110855, 2022-Ohio-1674, ¶ 7 (applying *Apanovitch*).

{¶ 11} The jurisdictional requirement under R.C. 2953.23(A)(1)(b) must be considered in accordance with *Brady* and *Kyles*. *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 410, at ¶ 32. Accordingly, a petitioner advancing a *Brady* violation claim within a petition for postconviction relief must prove "'in the context

of the entire record, suppression" of the withheld information "'undermines confidence in the outcome of the trial.'" *Id.*, quoting *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555, 131 L.Ed.2d 490, and *Bagley*, 473 U.S. at 678, 105 S.Ct. 3375, 87 L.Ed.2d 481.

{¶ 12} In this case, the trial court issued its decision approximately a month after the Ohio Supreme Court released *Bethel*. Nothing in the record indicates that either party timely brought *Bethel* to the trial court's attention. The trial court relied on the language of R.C. 2953.23(A)(1)(b) to conclude that Howard failed to demonstrate that no reasonable factfinder would have found him guilty at trial in consideration of the withheld police reports and, thus, the court lacked jurisdiction to review the merits of the claim. According to *Bethel*, that standard is not entirely accurate when considering a *Brady* violation claim within Ohio's postconviction relief statutory structure, which must account for the differing standard for demonstrating prejudice. *Bethel* at ¶ 32.

{¶ 13} The Ohio Supreme Court nonetheless reiterated that citing the language of the statutory provision is not detrimental to the outcome. *Id.* at ¶ 40. In concluding that the trial court lacked jurisdiction to review the petition for postconviction relief in *Bethel*, it was held that the petitioner had "not shown by clear and convincing evidence that no reasonable factfinder would have found him guilty or eligible for the death sentence but for constitutional error at trial" — a verbatim recitation of the statutory standard. *Bethel* at ¶ 40; *see also State v. Bethel*, 10th Dist. Franklin No. 19AP-324, 2020-Ohio-1343, ¶ 28 (the Tenth District concluded

that the trial court properly determined it lacked jurisdiction to consider a successive petition for postconviction relief because the offender failed to "show by clear and convincing evidence that, but for constitutional error at trial, no reasonable jury would have found him guilty or eligible for a death sentence"). Thus, in this respect, the *Kyles* standard was compatible with R.C. 2953.23(A)(1)(b) such that in this case, the trial court's stated rationale in denying the petition for postconviction relief is in complete alignment with *Bethel*.

{¶ 14} Howard nonetheless asks for this matter to be remanded to the trial court to consider the appropriate constitutional standard based on the discrepancy between the trial court's stated rationale in this case and the standard to be applied through *Kyles*. Even if we engaged in the extraordinary presumption that the trial court applied the statutory standard to the exclusion of the constitutional standard announced in *Kyles* for the sake of this discussion, it must be recognized that a "reviewing court will not reverse a correct judgment merely because a trial court relied on an erroneous reason as the basis for its determination." *O'Neal v. State*, 2020-Ohio-506, 146 N.E.3d 605, ¶ 20 (10th Dist.), citing *Hassey v. Columbus*, 2018-Ohio-3958, 111 N.E.3d 1253, ¶ 33 (10th Dist.), and *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). "'[A]n appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial.'" *Id*. at ¶ 20, quoting *Reynolds v. Budzik*, 134 Ohio App.3d 844, 846, 732 N.E.2d 485 (6th Dist.1999), fn. 3; *see, e.g., Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 410, at ¶ 59

(although the trial court committed error by denying leave to file a delayed motion for new trial, the result was nonetheless correct). R.C. 2953.23(A) codifies a trial court's continuing jurisdiction to consider the merits of a petitioner's requested relief. Failure to properly invoke the trial court's jurisdiction is fatal to the postconviction process. *See Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, at ¶ 36.

{¶ 15} As *Bethel* emphasizes, not all withheld evidence will sustain the trial court's jurisdiction to entertain or consider a petition for postconviction relief. *Bethel* at ¶ 40. If the information withheld has "limited probative" value in the context of the entire record of the conviction, the information would have been of limited use at trial and would not impact the confidence in the ultimate verdict. *Id.*

{¶ 16} In this case, Howard's argument in support of the petition for postconviction relief is based on his belief that Johnson was a "key" witness at trial. Without the transcript of the trial proceedings, there is no substantive record upon which that characterization of Johnson's trial testimony can be resolved. Instead, we are left to review the panel decision in the direct appeal, and upon that review, there is no indication that Johnson's testimony regarding witnessing the shooting was anything more than duplicative testimony to that of the several witnesses and codefendants who testified against Howard and were firsthand witnesses to the murder or to Howard's statements and actions after the fact. At the most basic level, impeaching Johnson at trial would have limited probative value as to Howard's guilt, since the primary and overwhelming evidence of Howard's misconduct was

secured through his codefendants' decision to testify against Howard. *See Bethel* at ¶ 40 (the withheld information had limited probative value in the context of the entire record, and therefore, the petition for postconviction relief was properly denied). None of that evidence is impacted by Johnson's recantation or the latest evidence demonstrating Johnson in fact told detectives he had not witnessed the shooting. In the context of the entire record, the alleged suppression of the withheld information in this case cannot be said to have undermined the confidence in the outcome of the trial.

{¶ 17} Accordingly, and even though it is not outwardly apparent that the trial court was provided the *Bethel* decision for consideration, the trial court correctly determined that it lacked jurisdiction to consider the merits of Howard's petition for postconviction relief.

{¶ 18} We affirm.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

EMANUELLA D. GROVES, J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR