[Cite as *Harmon v. Cincinnati*, 2023-Ohio-788.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| JEFFREY HARMON, | : | APPEAL NO. C-220236 |
| and | : | TRIAL NO. A-2003055 |
| DAVID BEASLEY, | : | *O P I N I O N.* |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| CITY OF CINCINNATI, | : | |
| and | : | |
| CITY OF CINCINNATI CIVIL SERVICE COMMISSION, | : | |
| Defendants-Appellants. | : | |


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: March 15, 2023


*Stokar Law, LLC,* and *Rob S. Stokar*, for Plaintiffs-Appellees,

*Emily Smart Woerner*, City Solicitor, *Lauren Creditt Mai* and *Heidi Rosales*, Senior Assistant City Solicitors, for Defendants-Appellants.

**ZAYAS, Judge**.

{¶1}   Defendant-appellant the City of Cincinnati Civil Service Commission ("the commission") denied plaintiffs-appellees Jeffrey Harmon and David Beasley ("the employees") a hearing on their independent appeals to the commission challenging the "Temporary Emergency Leave" ("TEL") program implemented during the COVID-19 pandemic by defendant-appellant city of Cincinnati.  The commission denied the employees a formal appeal hearing after finding that it did not have jurisdiction to consider the employees' appeals under the Civil Service Rules and that the grievance procedure set forth in the collective-bargaining agreement between the employees' labor union and the city was the proper forum to resolve the employees' claims.

{¶2}   Harmon and Beasley appealed the commission's decision to the Hamilton County Court of Common Pleas under R.C. 2506.01.  The trial court reversed the commission's decision, concluding, among other things, that "due process" required the commission to hold a hearing on the employees' independent administrative appeals.  The city and the commission (collectively, "the city") now appeal the trial court's judgment, arguing, in a single assignment of error, that the trial court lacked subject-matter jurisdiction to entertain the employees' appeal from the commission's decision.  We disagree and affirm the lower court's judgment.

**Procedural and Factual History**

{¶3}   In April 2020, the city informed two of its long-time classified employees, Harmon and Beasley, that they would be placed on a three-month leave under the city's TEL program.  The TEL program was implemented to help reduce the projected million-dollar-budget deficit the city was facing due to the COVID-19 pandemic.  Under TEL, noncritical city employees would be placed on "leave status," during which the employees could elect to use any accumulated leave, such as vacation or sick time, or elect to go unpaid and seek unemployment compensation from the

state of Ohio. The city, in its "Frequently Asked Questions" on the TEL program, instructed that critical employees could not contact noncritical employees on leave under TEL about work-related issues because "this is standard practice in mass layoffs."

{¶4} In May 2020, Harmon and Beasley each filed an appeal with the commission under the city's Civil Service Rule 17, Section 1, which provides that an employee may appeal "an order of dismissal, separation, demotion, suspension in excess of three working days, displacements, layoffs, results of a criminal background check or failure to meet the minimum qualifications for an Open Competitive, Non-Competitive or Promotional examination." In their appeals, the employees stated that they were challenging the procedural aspects of their layoffs and contended that the city had failed to follow Civil Service Rule 12, which governs layoff procedures, and requires the city to consider an employee's retention points when implementing a layoff. Had the city considered retention points, which factors in seniority, Harmon and Beasley maintain that they would not have been placed on TEL.

{¶5} Although Civil Service Rule 17 requires appeals under that rule to be set for a formal appeal hearing, the commission staff informed the employees that their appeals were not covered under that rule because the TEL program was not a layoff, and therefore, set their appeals for an "appearance" before the commission under Civil Service Rule 2. Under the Civil Service Rules, an appearance is procedurally different than an appeal hearing. Appearances are governed by Civil Service Rule 2, Section 5, which provides that "[w]henever an individual or group has a matter which requires or might require the consideration or decision of the Commission[,]" the commission secretary "shall make the necessary arrangements to bring such matters before the Commission in regular session." But an appeal hearing, governed by Civil Service Rule 17, only takes place after written notice is provided to all parties regarding the time and place of the hearing. Further, in an appeal hearing under Civil Service Rule 17,

the commission has the authority to subpoena and compel witnesses and administer oaths, and the rule allows parties to be represented by counsel.

{¶6} At the employees' "appearance," Harmon and Beasley argued that because the TEL program was "consummate to a layoff" they were entitled to a hearing under Civil Service Rule 17. When asked by the commission if granting a hearing on the employees' appeals would be an "admission" by the commission that the temporary leave under the TEL program was a layoff, the employees argued that the commission could consider any argument at the hearing as to whether the TEL program was a layoff but that if the commission chose not to have a hearing on their appeals of their layoffs as required under Civil Service Rule 17, the commission would be allowing the city to bypass individual due-process rights by simply calling a nondisciplinary leave anything other than a layoff.

{¶7} Ultimately, the commission determined, without the benefit of a hearing, that the TEL program was not a layoff, and therefore not appealable under Civil Service Rule 17. Additionally, the commission noted that because Harmon and Beasley were members of a labor union and because their union had also filed a grievance regarding the implementation of the TEL program on behalf of affected bargaining unit members, "the contractual grievance and arbitration procedure" was the appropriate forum for the resolution of the employees' individual claims.

{¶8} Citing R.C. Chapters 2505 and 2506, Harmon and Beasley filed a notice of appeal with the Hamilton County Court of Common Pleas challenging the commission's decision and arguing that they were entitled to a hearing on their claims under Civil Service Rule 17. The city moved to dismiss the appeal for lack of subject-matter jurisdiction. First, the city maintained that the trial court did not have subject-matter jurisdiction to consider the employees' administrative appeal under R.C. 2506.01 because for an administrative act to be reviewable on appeal under that statute, the act in question must have been the result of a quasi-judicial proceeding.

4

The city argued that because the leave implemented under the TEL program was not a layoff, the employees were not entitled to a formal appeal hearing under Civil Service Rule 17. Therefore, the commission's decision denying them a hearing occurred as a result of an appearance, which is not a quasi-judicial proceeding.

{¶9} Finally, the city also argued that because Harmon and Beasley were members of a labor union and because the collective-bargaining agreement in place between the union and the city provided for the city to have the right "to relieve employees of work for legitimate reasons," then any challenge to or interpretation of this right must be accomplished through the grievance-and-arbitration procedure set forth in the agreement, which, the city maintains, is the exclusive remedy for any contractual dispute.

{¶10} In response, the employees sought leave to file a "Consolidated Amended Notice of Appeal and Complaint for Writ of Mandamus," which was granted. The employees sought reversal of the commission's decision denying them a hearing on their individual appeals or, alternatively, the issuance of a writ directing the commission to hold a hearing on their appeals. The city again moved to dismiss the appeal, contending: (1) the common pleas court lacked subject-matter jurisdiction over this appeal under R.C. 2506.01 because the employees had not been entitled to a hearing before the commission on their appeals; (2) state law as set forth under R.C. 4117.10 divests civil service commissions of jurisdiction to hear appeals related to matters that are subject to binding labor arbitration; and (3) the complaint for a writ of mandamus should be denied for failure to state a claim upon which relief can be granted because the employees have an adequate remedy at law, which is the grievance-and-arbitration process already underway between the employees' labor union and the city.

{¶11} In response, the employees maintained that (1) under R.C. 2506.01, the trial court did have subject-matter jurisdiction to hear the appeal because the TEL

program had "all the characteristics of a layoff," and thus, the employees had been entitled to a hearing or quasi-judicial proceeding under Civil Service Rule 17; (2) the collective-bargaining agreement in place between the city and the union provided individual employees with the right to appeal the procedural aspects of their layoffs or displacements and thus, the commission was not divested of jurisdiction to hear the employees' appeals; and (3) the complaint for a writ of mandamus should not be dismissed because, absent court intervention, the employees had no adequate remedy to appeal the commission's denial of jurisdiction and, consequently, the denial of a hearing before the commission.

{¶12} The trial court denied the motion to dismiss, and the appeal was heard before a magistrate. Following oral arguments, the magistrate found that (1) the commission's decision denying the employees a hearing on their appeals violated "due process of law" by preventing them from "hav[ing] the opportunity to subpoena witnesses, to cross-examine witnesses, or to present other reliable evidence in support of their position that the TEL was a layoff" and (2) the commission's decision, "following the 'appearance[,]' that the TEL is not a layoff was arbitrary, unreasonable, and [was] not supported by the preponderance of substantial, reliable, and probative evidence." Therefore, the magistrate, concluding that the commission had jurisdiction to review the appeals, remanded the matter to the commission to hold a hearing on the merits of the appeals. The magistrate also denied the employees' request for a writ of mandamus, finding that the employees had an adequate remedy in the ordinary course of law, and determined that the common pleas court had subject-matter jurisdiction over the employees' administrative appeal "for the reasons set forth in [the employees'] memorandum in opposition to the [city's] motion to dismiss."

{¶13} The city objected to the magistrate's decision, arguing that the magistrate erred in finding that the court had jurisdiction to hear the administrative appeal and that the commission's decision to deny the employees a hearing violated

their right to due process of law. The common pleas court, concluding that the magistrate had properly determined the factual issues and appropriately applied the law, overruled the objections, adopted the decision of the magistrate, and ordered the commission to hold a hearing on the employees' appeals.

{¶14} The city now appeals and, in a single assignment of error, contends that the "trial court erred when it allowed the decision of the Civil Service Commission to be reviewed in the Hamilton County Court of Common Pleas." We note that the city is not appealing any of the findings made by the trial court but simply the authority of the court to even consider the appeal and make those findings. Because we hold that the trial court had subject-matter jurisdiction to consider the employees' administrative appeal from the commission's decision denying them a hearing, we overrule this assignment of error.

### Standard of Review

{¶15} Subject-matter jurisdiction is the statutory or constitutional power of the court to hear and decide a case upon its merits and to render an enforceable judgment in the action. *Morrison v. Steiner*, 32 Ohio St.2d 86, 290 N.E.2d 841 (1972), paragraph one of the syllabus. In the context of administrative appeals, "[c]ourts of common pleas only have 'such powers of review of proceedings of administrative officers and agencies as may be provided by law.' " *Clifton Care Ctr. v. Ohio Dept. of Job & Family Servs.*, 2013-Ohio-2742, 994 N.E.2d 879, ¶ 9 (10th Dist.), quoting Ohio Constitution, Article IV, Section 4. Determinations on subject-matter jurisdiction are reviewed de novo. *Cirino v. Ohio Bur. of Workers' Comp.*, 153 Ohio St.3d 33, 2018-Ohio-2665, 106 N.E.3d 41, ¶ 17.

### Employees' Appeal Reviewable under R.C. 2506.01

{¶16} In support of its assignment, the city first argues that the trial court lacked subject-matter jurisdiction under R.C. 2506.01 to consider the employees'

appeal from the commission's decision denying them a hearing because that decision was not the result of a quasi-judicial proceeding.

{¶17} R.C. 2506.01 provides for appeals from decisions of agencies of political subdivisions, including civil service commissions. For a decision to be appealed under R.C. 2506.01, it must be rendered in a quasi-judicial proceeding. *Lakota Local School Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 644, 671 N.E.2d 578 (6th Dist.1996). A quasi-judicial proceeding is earmarked by the requirement of notice, a hearing, and an opportunity to present evidence. *State ex rel. Fern v. Cincinnati*, 161 Ohio App.3d 804, 2005-Ohio-3168, 832 N.E.2d 106, ¶ 51 (1st Dist.). Whether a proceeding is a quasi-judicial proceeding from which an appeal may be taken under R.C. 2506.01 "depends not upon what the administrative agency actually did, but rather upon what the administrative agency should have done. 'Where the administrative agency should have given notice, conducted a hearing and afforded the parties an opportunity to be heard and to introduce evidence, the order is the result of [a quasi-judicial proceeding] even if the administration fails to afford such notice and hearing.' " *Id.*, quoting *In re Howard*, 73 Ohio App.3d 717, 598 N.E.2d 165 (10th Dist.1991).

{¶18} Here, Harmon and Beasley were not afforded a hearing on their appeals under Civil Service Rule 17 even though their notices of appeal and other written communication to the commission indicated that they were appealing the procedural aspects of their layoffs and a violation of Civil Service Rule 12. (Civil Service Rule 12 governs the procedures the city must follow when implementing a layoff and provides that "if there is a reduction of the work force, the appointing authority shall follow the procedures for laying off employees.") Civil Service Rule 17 provides that upon receipt of an appeal challenging a layoff, "the commission shall forthwith notify the appointing authority and shall hear or appoint a trial board to hear such appeal within thirty calendar days after the time stamped date of receipt of the written appeal." There is no dispute that a hearing under Civil Service Rule 17 constitutes a quasi-

8

judicial proceeding. Thus, if the employees were entitled to a hearing on their appeals under Civil Service Rule 17, then the employees' appeal of the commission's decision is reviewable by the trial court under R.C. 2506.01.

{¶19} Although the city argues that the leave under the TEL program is not a layoff, that is not evident from the notices of appeal sent to the commission. The notices of appeal cite or discuss the civil service rule governing layoffs, and specifically state that the employee is appealing the procedural aspects of a layoff and is requesting a hearing on that matter. Under these facts, the civil service rules required the commission to set the employees' appeals for a hearing. The commission may not abandon its own rules and sua sponte decide that the leave under the TEL program was not a layoff prior to holding a hearing on that issue. The city's argument that the leave under the TEL program was not a layoff is essentially a defense or justification as to why the city did not follow Civil Service Rule 12 in implementing the TEL program. It simply does not make sense for the civil service rules to require a hearing on an employee's appeal of a layoff, yet then consider the employer's defense at a proceeding—here, an appearance—which is less rigorous than the required hearing. A civil service commission must follow its own rules. *See State ex rel. Lanter v. Civil Serv. Comm.*, 1st Dist. Hamilton No. C-950285, 1995 Ohio App. LEXIS 5783, 9 (Dec. 29, 1995). Accordingly, given the facts in this case—where the employees' notices of appeal to the commission indicate that the employee is appealing a layoff and requesting a hearing and cites or describes a violation of Civil Service Rule 12—we hold that the commission was required to set the appeal for a formal hearing under Civil Service Rule 17.

{¶20} Because the employees' appeals should have been set for a formal hearing, the commission's decision denying them a hearing was an adjudication from a quasi-judicial proceeding. Accordingly, an appeal from that decision to the trial

9

court was proper under R.C. 2506.01. *See Fern,* 161 Ohio App.3d 804, 2005-Ohio-3168, 832 N.E.2d 106, at ¶ 51.

### R.C. 4117.10 Did Not Divest Trial Court of Jurisdiction

**{¶21}** Next, the city argues that under R.C. 4117.10(A), where a dispute is subject to binding arbitration in accordance with a collective-bargaining agreement, a city's civil service commission, and by extension, a trial court, is without subject-matter jurisdiction to hear an administrative appeal regarding that dispute. But that is not always the case where the collective-bargaining agreement provides for employees to retain certain employee rights, including the right to pursue an individual action. R.C. 4117.10(A) provides:

> An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure. Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to all wages, hours, and terms and conditions of employment for public employees.

**{¶22}** R.C. 4117.10(A) both restricts the remedies available for contesting employment decisions and sets out the relationship between provisions of a collective-bargaining agreement and state or local laws. *Hassey v. City of Columbus*, 2018-Ohio-3958, 111 N.E.3d 1253, ¶ 26 (10th Dist.), citing *Streetsboro Edn. Assn. v. Streetsboro*

*City School Dist. Bd. of Edn.*, 68 Ohio St.3d 288, 291, 626 N.E.2d 110 (1994). "Under R.C. 4117.10(A), if a provision of a collective bargaining agreement conflicts with the law, the provision prevails over the law, except for laws specifically enumerated in the statute." *Id.*, citing *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St.3d 26, 29, 641 N.E.2d 188 (1994). Here, Civil Service Rule 17 allows city employees to appeal a layoff. But this right can be bargained away under R.C. 4117.10(A). *Id.* at ¶ 27, citing *In re Lemley-Wingo*, 4th Dist. Ross No. 1622, 1990 Ohio App. LEXIS 3869 (Aug. 22, 1990) ("The rights to appeal a [layoff] through * * * a civil service commission are not laws exempted from the bargaining table under R.C. 4117.10(A)."). "In other words, the statutory or charter-based right to appeal [employee rights] 'is a proper subject for a collective bargaining agreement' and 'may be either retained or bargained away by the parties.' " *Id.*, quoting *Fields v. Summit Cty. Executive Branch*, 83 Ohio App.3d 68, 73, 613 N.E.2d 1093 (9th Dist.1992). Therefore, even if a collective-bargaining agreement includes a grievance procedure that culminates in final-and-binding arbitration, that agreement may allow an employee to pursue remedies provided by law instead of following the grievance procedure. *Id.*, citing *Davis v. Hocking Cty. Sheriff*, 76 Ohio App.3d 843, 847-848, 603 N.E.2d 406 (4th Dist.1992). When an employee elects to invoke his or her statutory or charter-based right to appeal, "the administrative entity with the legal authority to hear the appeal possesses the necessary jurisdiction to determine the matter before it." *Id.*

{¶23} Here, a collective-bargaining agreement ("CBA") is in place between the employees' labor union and the city, which provides for a final-and-binding arbitration of grievances. The city argues that because the employees' labor union had already filed a grievance related to the TEL program on behalf of affected employees, the commission did not have jurisdiction to consider any individual employee appeals related to the TEL program. However, we keep in mind that a collective-bargaining

11

agreement is a contract, and "the overriding concern of any court when construing a contract is to ascertain and effectuate the intent of the parties." *Hassey* at ¶ 35. "The intent of the parties is presumed to reside in the language the parties chose to employ in the contract." *Id.* With that in mind, we turn to the CBA.

**{¶24}** Section 5.1 of the CBA discusses the rights of employees in the bargaining unit and specifically states that the parties agree that "a number of terms and conditions of employment" are not specified in the CBA, and with respect to such terms and conditions not specified, "no employee in the bargaining unit waives any individual right under City Charter; City Code; City rule or regulation; and state or federal statute, constitutional principle, or common law." Further, Section 5.1 of the CBA states that with respect to any term or condition not specified, "it is specifically recognized that such individual employee rights remain unaffected by this Agreement, and that such individual employee rights are enforceable through normal Civil Service, regulatory, and/or judicial processes." This makes sense given that a grievance under the CBA is defined only as "an alleged violation of a specific provision of this Agreement."

**{¶25}** Here, Harmon and Beasley indicated in their notices of appeal to the commission that they were appealing their "layoffs." Section 10.1 of the CBA governs "layoffs or displacements" and provides in relevant part that "[e]mployees have the right to appeal the procedural aspects of layoff or displacement to the Civil Service Commission." Thus, if the leave under the TEL program constitutes a layoff, Harmon and Beasley have retained their right to appeal procedural aspects of their layoff to the commission. But even if the temporary leave under the TEL program is not considered a layoff, as the city argues, Section 5.1 of the CBA specifically allows employees to enforce their individual employee rights concerning terms and conditions of employment not specified in the CBA through the "Civil Service, regulatory, and/or judicial processes." Section 10.1, which governs layoffs, is the only provision of the

CBA that addresses any sort of employee leave implemented by the city for nondisciplinary reasons. There is no other provision in the CBA which would govern any emergency or temporary leave. Thus, under Section 5.1 of the CBA, Harmon and Beasley could still pursue their appeals concerning the TEL program through other judicial processes.

{¶26} Finally, the city maintains that Harmon and Beasley should be prevented from pursing their individual rights of action because their labor union filed a grievance that also raises the same issue of whether the implemented leave under TEL constitutes a layoff. The city cites to *Leon v. Boardman Twp.*, 100 Ohio St.3d 335, 2003-Ohio-6466, 800 N.E.2d 12, ¶ 17, for the proposition that sound labor policy disfavors an individualized right of action "because it tends to vitiate the exclusivity of union representation, disrupt industrial harmony, and, in particular, impede the efforts of employer and union to establish a uniform method for the orderly administration of employee grievances." But the *Leon* court also recognized that the collective-bargaining agreement is the governing authority over whether an employee has retained an individualized right of action. *Id.* at ¶ 17-18. The court said, "[A]n aggrieved worker whose employment is governed by a collective bargaining agreement that provides for binding arbitration will generally be deemed to have relinquished his or her right to act independently of the union in all matters related to or arising from the contract, *except to the limited extent that the agreement explicitly provides to the contrary.*" (Emphasis added.) *Id.* at ¶ 17. Here, the CBA expressly allows employees to retain their rights to pursue an individual claim regarding an employment decision not covered in the CBA that adversely affects them. Regardless of whether the TEL program constituted a layoff, or a leave not covered under the terms and conditions of the CBA, that agreement permits Harmon and Beasley to enforce their individual rights of action. Therefore, we hold that the commission, and by extension, the trial

court, was not divested of jurisdiction over the employees' individual appeals in this case by virtue of the CBA.

**{¶27}** In conclusion, because we have determined that Harmon's and Beasley's appeal was reviewable by the trial court under R.C. 2506.01 and that R.C. 4117.10 does not divest the commission of jurisdiction to consider Harmon and Beasley's individual appeals, we hold that the trial court had subject-matter jurisdiction to entertain the employees' appeal from the commission's decision denying them a hearing. Accordingly, we overrule the city's single assignment of error and affirm the trial court's judgment.

Judgment affirmed.


**CROUSE, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.