**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Harmon v. Cincinnati*, Slip Opinion No. 2024-Ohio-2889.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-2889

HARMON ET AL., APPELLEES, *v*. THE CITY OF CINCINNATI ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Harmon v. Cincinnati*, Slip Opinion No. 2024-Ohio-2889.]**

*Civil service—R.C. 4117.10(A)—R.C. 2506.01(A)—Common pleas court not divested of jurisdiction to hear city employees' administrative appeal regarding whether separation from employment under temporary emergency-leave program implemented in response to COVID-19 pandemic constituted a layoff—Judgment affirmed.*

(No. 2023-0559—Submitted January 9, 2024—Decided August 6, 2024.)

APPEAL from the Court of Appeals for Hamilton County,
No. C-220236, 2023-Ohio-788.

_____

STEWART, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DONNELLY, and BRUNNER, JJ., joined. DETERS, J., dissented, with an opinion joined by DEWINE, J.

**STEWART, J.**

**{¶ 1}** In this case, we are asked to determine whether the Hamilton County Court of Common Pleas had jurisdiction over the administrative appeal of appellees, Jeffrey Harmon and David Beasley, from a decision of appellant the Cincinnati Civil Service Commission ("the commission"). We hold that Harmon and Beasley had a right to appeal the commission's decision to the common pleas court under R.C. 2506.01 and that they were not precluded from doing so by R.C. 4117.10. Accordingly, the common pleas court had jurisdiction over the administrative appeal. We therefore affirm the judgment of the First District Court of Appeals.

## I. FACTS AND PROCEDURAL HISTORY

**{¶ 2}** Harmon and Beasley were longtime employees of appellant the City of Cincinnati ("the city") and members of a city-employees union, Cincinnati Organized and Dedicated Employees, Inc. ("CODE"). In April 2020, the city implemented a Temporary Emergency Leave ("TEL") program to, among other things, mitigate anticipated financial losses resulting from the COVID-19 pandemic by placing certain city employees on leave. The city explained at that time that it expected a decrease in income-tax revenue (the city's main source of general revenue) due to the state-imposed delay in collection of income taxes and rising unemployment rates and that it expected decreases in revenue from sources such as parking meters and casino taxes.

**{¶ 3}** The city also explained that the declining revenue was coupled with an anticipated increase in pandemic-related costs like purchasing personal protective equipment for its employees. This anticipated financial double-hit had required the city to "take quick action to close [the] projected deficit." As of March 30, 2020, the city forecasted that its general fund would experience a negative variance of $27.5 million instead of the pre-pandemic anticipated positive variance of $24 million. And given the uncertainty during the early days of the

COVID-19 pandemic, the city could not confidently predict the loss in revenue and increase in expenses that it would incur. Therefore, the TEL program was intended to preserve basic services while helping to stabilize the city's budget until the city could get a better handle on its finances. Workers placed on leave under the program could either use accrued paid leave to cover the leave period or elect to receive no payment from the city and be eligible for unemployment compensation from the State of Ohio.

{¶ 4} Harmon and Beasley were placed on leave under the program, and each used accrued paid leave for that time. They appealed the city's decision to place them on leave to the commission, asserting that the city had not followed proper procedure under Cincinnati Civil Service Rule 12 in conducting their layoffs under the TEL program. CODE filed a grievance on behalf of its members, alleging claims similar to those of Harmon and Beasley. The city argued that the TEL program was not a layoff and therefore the civil-service rules concerning layoffs did not apply.

{¶ 5} The commission agreed with the city that the TEL program was not a layoff. However, the commission made that decision following Harmon and Beasley's "appearance" before the commission rather than after a hearing. That is because the commission had determined that Harmon and Beasley were not entitled to a hearing despite their request for one.

{¶ 6} There are key differences between an appearance and a hearing under the civil-service rules. At a hearing, the parties may call witnesses, present evidence, and subpoena witnesses and documents. *See* Cincinnati Civil Service R. 17. In contrast, an appearance is scheduled when "an individual or group has a matter which requires or might require the consideration or decision of the Commission," and the civil-service rules do not require that the individual or group attend the appearance for the commission to consider the matter. Cincinnati Civil Service R. 2, § 5.

3

**{¶ 7}** Harmon and Beasley appealed the commission's determination that they were not entitled to a hearing to the Hamilton County Court of Common Pleas under R.C. 2506.01. That court reversed the commission's determination and remanded the matter to the commission to conduct a hearing regarding whether the TEL program was a layoff. The city appealed that decision to the First District, arguing that the common pleas court lacked subject-matter jurisdiction to consider Harmon and Beasley's appeal from the commission's decision because the matter was governed by the parties' collective-bargaining agreement ("the CBA") and because the commission's determination regarding whether the TEL program was a layoff was not the result of a quasi-judicial proceeding. 2023-Ohio-788, ¶ 16, 21. The First District held that the common pleas court had jurisdiction to consider the appeal under the terms of the CBA and was not precluded from doing so by R.C. 4117.10(A). 2023-Ohio-788 at ¶ 21-26. And the court of appeals held that the common pleas court had jurisdiction under R.C. 2506.01 because the commission's decision denying a hearing was an adjudication from a quasi-judicial proceeding. 2023-Ohio-788 at ¶ 20.

**{¶ 8}** This court accepted the city and the commission's appeal to review two propositions of law:

> 1. A court considering whether an individual right of action i[s] preempted by R.C. 4117 must consider whether the underlying claim arose from or depended upon an interpretation of the collective bargaining rights guaranteed by a collective bargaining agreement. Where the cause of action requires interpretation of the collective bargaining agreement, the binding arbitration procedure provided by the contract is the exclusive remedy and the trial court lacks subject matter jurisdiction.

4

2. When there is uncertainty as to whether a party is entitled to a quasi-judicial hearing before a municipal civil service commission, a court must defer to the discretion of the administrative agency as to the interpretation of its rules. Where the commission finds that a party is not entitled to a quasi-judicial hearing pursuant to its rules, a trial court lacks subject matter jurisdiction to hear an administrative appeal under R.C. 2506.

*See* 2023-Ohio-2407.

## II. LAW AND ANALYSIS

### A. *The common pleas court had jurisdiction to consider the administrative appeal under the terms of the CBA and was not precluded from doing so by R.C. 4117.10(A)*

**{¶ 9}** If a collective-bargaining agreement provides for a final and binding arbitration of grievances, the parties are subject solely to that grievance procedure. R.C. 4117.10(A). However, if there is no collective-bargaining agreement or the agreement does not cover a certain issue, the parties are subject to all applicable state or local laws and may bring claims outside the arbitration procedure. *See id.*

**{¶ 10}** In this case, there is a collective-bargaining agreement between the city and CODE. While many subjects fall exclusively within the arbitration-of-grievances requirement of the CBA, § 10.1(B) of the CBA, which governs layoffs, specifically preserves an employee's right "to appeal the procedural aspects of layoff or displacement to the Civil Service Commission." Harmon and Beasley maintain that because they were appealing procedural aspects of the TEL program to the commission, their claims were not governed by the CBA's grievance procedure.

**{¶ 11}** The city relies on the management-rights clause of § 5.2 of the CBA, which states that the city retains the rights "[t]o determine any and all terms and

5

conditions of employment not specifically set forth in [the CBA]" and "to layoff or relieve employees due to lack of work or funds or for other legitimate reasons."[1] The city's reliance on this provision fails for multiple reasons.

**{¶ 12}** Importantly, the city forfeited this argument because it did not raise it to the First District. The city admits that it did not raise the argument to the First District (and on review, we note that the terms "management" and "5.2" do not appear in the city's merit brief or reply brief filed in the First District). But the city submits that it should have the opportunity to advance an argument in this court based on the management-rights clause because the First District sua sponte raised it and the city did not have a chance to develop the argument below. But, as the city also argues, the First District did not make any findings with respect to § 5.2 of the CBA (and like the city failed to do in its briefs filed in the First District, the First District did not refer to "management" or "5.2" anywhere in its decision). The First District did not sua sponte raise the issue of application of the management-rights clause, and there is no justification for the city's failure to raise that argument below.

**{¶ 13}** Additionally, the city raised arguments regarding § 10.1 of the CBA and other specific language in the CBA in its briefs filed in the First District, so it had the opportunity to argue that the CBA supported a management-rights-clause claim. But it failed to specifically mention § 5.2 of the CBA and thus forfeited any argument regarding that provision. *See State v. Rogers*, 2015-Ohio-2459, ¶ 21 ("forfeiture is the failure to timely assert a right or object to an error").

**{¶ 14}** Even if the city did not forfeit the management-rights-clause argument, it still fails to explain how that clause, which is relatively general in nature, should be given effect over the more specific layoff provisions in § 10.1 of the CBA. Instead, the city claims that § 5.2 proves that this matter is merely a

---

1. While the city has maintained that the TEL program was not a layoff, it specifically cites the layoff language of § 5.2 of the CBA to support its arguments here.

contractual dispute, and it offers numerous policy and statutory-interpretation reasons for allowing only one avenue of relief for employees such as Harmon and Beasley. It is a maxim of contract interpretation that when two clauses of a contract appear to be inconsistent, the more specific clause prevails over the more general clause. *See Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170, 175 (8th Dist. 1986), citing *Hoke v. Marcis*, 127 N.E.2d 54, 55 (8th Dist. 1955). Here, § 10.1 of the CBA specifically concerns layoff and displacement procedures, and that specific provision trumps the more general management-rights clause of § 5.2.

{¶ 15} Additionally, even if the TEL program is not a layoff under § 10.1 of the CBA, § 5.1 allows employees to enforce their individual employee rights concerning terms and conditions of employment not specified in the CBA, through the "normal Civil Service, regulatory, and/or judicial processes." Other than § 10.1, no other part of the CBA addresses nondisciplinary leave or emergency or temporary leave. Therefore, even if the TEL program does not qualify under § 10.1 as a layoff, an employee may still have an individual right of action under § 5.1, because participation in the program was a condition of employment.[2] The city does not dispute that § 5.1 applies and provides an individual right of action, but the city claims that the management-rights clause in § 5.2 of the CBA somehow overrides § 5.1. However, as discussed above, the city forfeited any arguments regarding the management-rights clause.

{¶ 16} Next, the city posits that policy reasons should bar any individual right of action outside those available under the CBA, especially in cases like this

---

2. The dissenting opinion claims that we "endorse[]" the court of appeals' "either/or approach" in that we cite § 5.1 of the CBA as a basis for an action before the commission. However, both this majority opinion and the First District's decision refer to § 5.1 in addressing the city's argument that this action is barred by R.C. 4117.10 and the CBA. This is not a matter of the court's "hedg[ing] its bets," dissenting opinion, ¶ 40, but is instead this court's considering the propositions of law raised by the commission. The dissent may choose to focus its analysis solely on R.C. 2506.01, but this majority opinion addresses both propositions of law put before us.

one in which the union is proceeding with a claim identical to that in the individual's action. While presenting identical claims in a single action may be good policy, the CBA governs and allows employees to assert their individual rights under § 5.1 and § 10.1. If the city wanted to foreclose an individual's avenues for relief, it should have bargained for that result in the CBA. Instead, it now argues that (1) the CBA governs and Harmon and Beasley have no rights as individuals to challenge a layoff or a condition of their employment under the CBA (despite there being express language in the CBA to the contrary) and (2) policy rationale should override the CBA. The city cannot have it both ways. If the CBA applies, which it does under R.C. 4117.10(A), then the parties must follow the terms of the CBA, which include individual rights of appeal under § 10.1 and enforcement of those rights under § 5.1.

{¶ 17} The First District correctly concluded that under § 5.1 and § 10.1 of the CBA, Harmon and Beasley have a right to contest alleged procedural deficiencies in the TEL program. It also correctly concluded that the CBA did not terminate the common pleas court's jurisdiction to hear the administrative appeal. Therefore, we reject the city's first proposition of law.

### B. *The common pleas court had jurisdiction under R.C. 2506.01(A)*

{¶ 18} A party may appeal any "final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision" to the court of common pleas of the county in which the principal office of the political subdivision is located. R.C. 2506.01(A). However, the final order, adjudication, or decision appealed from must have been rendered in a quasi-judicial proceeding. *State ex rel. McArthur v. DeSouza*, 65 Ohio St.3d 25, 27-28 (1992); *M.J. Kelley Co. v. Cleveland*, 32 Ohio St.2d 150 (1972), paragraph one of the syllabus. A quasi-judicial proceeding is a proceeding that requires notice, a hearing, and the opportunity to introduce evidence. *See McArthur* at 27, citing *M.J. Kelley Co.* at paragraph two of the syllabus.

8

Importantly, whether a proceeding is quasi-judicial is a question of law, not of fact. *See In re Appeal of Howard*, 73 Ohio App.3d 717, 719 (10th Dist. 1991).

> "Whether there is an adjudication depends not upon what the administrative agency actually did, but rather upon what the administrative agency *should have done*. Where the administrative agency should have given notice, conducted a hearing and afforded the parties an opportunity to be heard and to introduce evidence, the order is the result of an adjudication even if the administrative agency fails to afford such notice and hearing."

(Emphasis added.) *State ex rel. Fern v. Cincinnati*, 2005-Ohio-3168, ¶ 51 (1st Dist.), quoting *Howard* at 719.

{¶ 19} Here, the commission was required to give notice and conduct a hearing under the Cincinnati Civil Service Rules. Under Cincinnati Civil Service R. 17, § 1, "[a]n employee may appeal . . . layoffs . . . by filing a notice of appeal with the Commission." Harmon and Beasley timely filed their appeals with the commission under this rule, arguing that the city had violated the layoff procedures set forth in Cincinnati Civil Service R. 12.

{¶ 20} Upon the filing of an appeal under the civil-service rules, the commission must take numerous steps to conduct a hearing, including issuing notice. Cincinnati Civil Service R. 17, § 1(D). The commission must admit and consider evidence, allow the parties to be represented by counsel, and issue a decision that must be recorded in the commission's minutes and sent to the parties. Cincinnati Civil Service R. 17, § 1(E)(3) and (5). The commission also has the power to issue subpoenas for witness testimony or documents and to administer oaths. *See* Cincinnati Civil Service R. 17, § 1(E)(3).

{¶ 21} The commission did not set Harmon's and Beasley's appeals for a hearing or take any other steps required by Cincinnati Civil Service R. 17, such as issuing the subpoenas Harmon and Beasley had requested, because the commission found that the TEL program was not a layoff and thus Cincinnati Civil Service R. 17 did not apply. Instead, the commission held an "appearance" under Cincinnati Civil Service R. 2, § 5. An appearance does not require the same procedures as Cincinnati Civil Service R. 17, and the parties here agree that an appearance is not a quasi-judicial proceeding. At the appearance, the commission asked the parties some questions, including whether holding a hearing under Cincinnati Civil Service R. 17 would be tantamount to an admission that the TEL program was a layoff. Harmon and Beasley argued that the commission could take evidence at a hearing to determine whether the program was a layoff. The commission, however, did not allow the parties to present such evidence and summarily decided that the TEL program was not a layoff.

{¶ 22} Just as it did below, the city's arguments here rest on the fact that the commission determined that a full hearing was unnecessary because, in its view, the TEL program was not a layoff. We conclude that the commission exercised its discretion in deciding that the program was not a layoff, rendering the appearance a quasi-judicial proceeding. *See M.J. Kelley Co.*, 32 Ohio St.2d at 153. And while the commission did not follow the requirements under Cincinnati Civil Service R. 17 for conducting a hearing, it was required to do so.

{¶ 23} There was disagreement among the parties regarding whether the TEL program was a layoff (though the city had analogized the program to a "mass layoff" in its frequently-asked-questions document concerning the program). Because there was some doubt regarding whether the program was a layoff, the commission should have proceeded with a hearing to allow the parties to argue their positions. As the First District noted, "[t]he commission may not abandon its own rules and sua sponte decide that the leave under the TEL program was not a layoff

10

prior to holding a hearing on that issue." 2023-Ohio-788 at ¶ 19. If the commission had conducted a hearing, there would have been no doubt that the common pleas court had jurisdiction over Harmon and Beasley's appeal, and a hearing would have provided greater insight and detail into the matter for the court to consider in making its decision. Regardless, because the commission's decision was the result of a quasi-judicial proceeding, the common pleas court had subject-matter jurisdiction to review the decision on administrative appeal and to ultimately remand the matter to the commission for a hearing.

{¶ 24} The city contends that the commission has the authority to interpret its own rules and that it was within the commission's discretion to determine whether a hearing was required. The city attempts to distinguish this case from the First District's decision in *State ex rel. Bower v. Cincinnati*, 2023-Ohio-3369 (1st Dist.). In that case, Bower, a sergeant with the Cincinnati Police Department, had challenged the city's failure to follow a promotional-eligibility-exam grading rule requiring examinee anonymity. *Bower* at ¶ 2-7. The First District determined that the commission had been required to hold a hearing on the challenge because Cincinnati Civil Service R. 17, § 2, allowed an appeal regarding "'the grading of an examination'" (emphasis deleted), *Bower* at ¶ 17; *id.* at ¶ 18-21. Here, the city states that in contrast, "[Cincinnati Civil Service] R. 12 provides no indication that the Commission can review the determination of whether a layoff occurred." But at the same time, the city argues that the commission *was* authorized to interpret its own rules to find that a layoff did *not* occur—without even holding a hearing. But both arguments cannot be correct. Either the commission has the authority to determine that a layoff occurred or it does not have the authority to do so. In either event, the city's analysis does not support a claim that the commission is permitted to make such determinations without following proper procedure under its own rules. Additionally, the city's argument that there is a distinction between this case and *Bower* is unavailing because Cincinnati Civil Service R. 17, § 1 allows an

appeal concerning layoffs, just like § 2 of that rule allows an appeal concerning the grading of an exam.

{¶ 25} The city also argues that the TEL program is not encompassed by Cincinnati Civil Service R. 17, because the civil-service rules do not specifically contemplate or otherwise address the TEL program and therefore the commission was correct to set the matter for an appearance instead of a hearing. But the initiation of the program in April 2020 was a somewhat sudden response to the COVID-19 pandemic, so it makes sense that the program was not mentioned in the civil-service rules. And there is no requirement that the civil-service rules contain the exact name of a program for that program to fall under Cincinnati Civil Service R. 17. The commission was indeed required to determine whether the TEL program was a layoff, but that decision should have occurred only after it conducted a hearing under Cincinnati Civil Service R. 17.

{¶ 26} The city argues that affirming the First District's decision will endorse a practice that will reward employees for "creative pleading" and using "magic words" to garner an otherwise unauthorized appeal. This argument is also unavailing. If a party appeals the procedural aspects of a layoff, an initial question should always be: Was there, in fact, a layoff such that the procedural civil-service rules apply? Whether there was a layoff is the baseline determination that the parties must establish or refute at the hearing, and the commission does not have the authority to undercut the procedure for making that initial determination. Further, this case is specifically about a rare instance of mandatory leave, because it relates to an emergency measure that was taken in the early days of the COVID-19 pandemic. The TEL program did not look typical, because it was created under atypical circumstances. The rarity of such circumstances further supports the conclusion that the commission should have conducted a hearing to determine whether the TEL program was a layoff before it summarily dismissed the appeals.

**{¶ 27}** The dissenting opinion ignores what the commission should have done in favor of what the commission actually did. But what the commission did is not what our caselaw requires, and it is apparent that the dissent knows better, because it cites the correct standard—"whether a proceeding is a quasi-judicial one . . . depends upon what the law requires the agency to do, not what the agency actually does," *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 2014-Ohio-4364, ¶ 36. *See* dissenting opinion at ¶ 43. We agree with the dissent that the commission needed to determine whether the TEL program was a layoff before considering Harmon's and Beasley's arguments regarding whether the city complied with the rules for a layoff. However, the dissenting opinion claims that the commission did not need to hold a hearing and that it could determine whether a layoff occurred by holding only an appearance, simply because that's how the commission chose to proceed. That analysis rings hollow, especially considering the dissenting opinion's suggestion that we are finding that Harmon and Beasley were appealing layoffs because that is what Harmon and Beasley said they were doing. Yet, the dissenting opinion would find that the commission had authority to forego a hearing, simply because the commission says it had such authority.[3]

**{¶ 28}** There is nothing in the Cincinnati Civil Service Rules that requires such a determination to be made at an appearance under Cincinnati Civil Service R. 2, § 5, and the dissent concedes that Rule 2, § 5 only "plausibly" applies. It makes sense that the rules do not dictate that such questions be considered at an appearance. If parties are seeking a hearing on a matter, any questions about the subject matter of the hearing are best considered in the context of that hearing, not at a separate, standalone appearance under the rules. Indeed, allowing the commission to proceed with only an appearance based on nothing but its own

---

3. As explained above, the city's analysis does not even support a claim that the commission is permitted to make such determinations without following the proper procedure under its own rules.

determination of whether a layoff occurred seems to be a convenient way to allow the commission to escape appellate scrutiny, because parties who are dissatisfied with the results of an appearance do not have a right to appeal the results.

{¶ 29} Additionally, the dissent's comparison of this case to *Mun. Constr. Equip. Operators' Labor Council*, 2014-Ohio-4364, is inapt because that case applied different rules in a different type of action. In *Mun. Constr. Equip. Operators' Labor Council*, the Cleveland Civil Service Rules required a predisciplinary hearing. *Id.* at ¶ 5-6. Only if the predisciplinary procedure resulted in an initial decision favoring a discharge, demotion, or suspension longer than ten days could the matter proceed to a full disciplinary hearing. *See id.* The employee in that case was given notice of a predisciplinary hearing under the Cleveland Civil Service Rules. *See id.* at ¶ 11. However, the City of Cleveland cancelled that hearing and immediately terminated the employee because it had found that he had not scored highly enough to retain his appointment. *See id.* at ¶ 12-13.

{¶ 30} The applicable rules and the facts in this case are different from those in *Mun. Constr. Equip. Operators' Labor Council*. This case does not involve a disciplinary matter, there was no requirement for a separate prehearing to determine whether a full hearing should be held, and there is no test or other rule that would definitively place Harmon's and Beasley's complaints outside of a hearing. The dissent tries to compare an appearance to a predisciplinary hearing, but there is no authority for such a comparison. Under the rules applicable in this case, there was no basis for the commission to divorce the baseline question of whether a layoff occurred from the hearing on the layoff procedures. As the dissent concedes, whether the TEL program was a layoff was an open question, and since the commission should have resolved it in a quasi-judicial proceeding, the common pleas court had jurisdiction to consider Harmon and Beasley's appeal.

{¶ 31} The commission was required to conduct a hearing on Harmon's and Beasley's appeals. Since the commission should have conducted a hearing, its

failure to do so rendered its decision the result of a quasi-judicial proceeding and Harmon and Beasley were thus permitted to appeal the commission's decision to the court of common pleas under R.C. 2506.01(A).

### III. CONCLUSION

**{¶ 32}** None of the city's arguments in this matter provide a basis to divest the common pleas court of jurisdiction to hear Harmon and Beasley's administrative appeal. Under R.C. 4117.10(A), the CBA controls aspects of the parties' relationship. But the CBA specifically preserved the rights of an individual to appeal to the commission the procedural aspects of his or her layoff, which is what Harmon and Beasley have asserted. Therefore, this matter falls outside the CBA's arbitration procedure and the common pleas court had jurisdiction to adjudicate Harmon and Beasley's administrative appeal.

**{¶ 33}** Further, the commission was required to hold a hearing on the matter—not merely an appearance. But the commission's failure to do so did not divest the common pleas court of jurisdiction under R.C. 2506.01, and the common pleas court was not required to defer to the commission's incorrect application of its own rules. We therefore affirm the judgment of the First District Court of Appeals.

Judgment affirmed.

_____

**DETERS, J., joined by DEWINE, J., dissenting.**

**{¶ 34}** The Cincinnati Civil Service Commission's decision not to hear the appeals of Jeffrey Harmon and David Beasley was not the result of a quasi-judicial proceeding. For that reason, the Hamilton County Court of Common Pleas lacked jurisdiction over Harmon and Beasley's administrative appeal of the commission's decision to that court. Because the majority concludes otherwise, I respectfully dissent.

**Harmon and Beasley appeal to the Cincinnati Civil Service Commission**

{¶ 35} Understanding the procedural posture of this appeal is necessary to its resolution. In April 2020, Harmon and Beasley were placed on leave under the Temporary Emergency Leave program ("TEL") instituted by the City of Cincinnati. Harmon filed an appeal with the Cincinnati Civil Service Commission ("the commission"), indicating the basis of his appeal was that "[l]ayoff procedures [were] not followed." Similarly, Beasley appealed "the procedural aspects of [his] layoff" to the commission.

{¶ 36} Harmon and Beasley were scheduled for "appearance[s]" before the commission. According to an email sent to Harmon by an analyst with the city's human-resources department, Harmon was going to be "given the opportunity to speak before the Commission." After Harmon replied to that email asking for more time "to prepare for the hearing on [his] appeal and to submit supporting materials so there [would be] a record to support [his] appeal," the analyst explained to him that "a hearing for th[e] matter ha[d] not been scheduled as [it was] not one that is covered under [Cincinnati Civil Service] Rule 17." Similar correspondence occurred between the city and Beasley.

{¶ 37} An agenda for the July 2, 2020 commission meeting shows that agenda items titled "Jeffery Harmon regarding Temporary Emergency Leave" and "David Beasley regarding Temporary Emergency Leave" were placed in the category "APPEARANCE BEFORE THE COMMISSION." (Capitalization in original.) Minutes of the July 2 meeting indicate that the Harmon and Beasley matters were "Tabled" until the July 16 commission meeting. At the July 16 meeting, Harmon and Beasley made their arguments as to why the TEL was a layoff. The commission then determined that the TEL was not a layoff, stating, "[The] Commission concludes that the [TEL] was not a layoff or separation and therefore is not an appealable matter under [Cincinnati] Civil Service Rule 17, Section 1."

**Harmon and Beasley appeal to the common pleas court**

{¶ 38} Harmon and Beasley appealed to the common pleas court the commission's decision to not hold hearings on their appeals under Cincinnati Civil Service Rule 17 ("Rule 17"). They amended their appeal to add a complaint for a writ of mandamus seeking to compel the commission to hold hearings on their appeals. The common pleas court determined that the commission erred by not holding hearings on whether the TEL was a layoff. The court remanded the matter to the commission "so that [Harmon and Beasley could] have the opportunity to present sworn testimony, to cross-examine witnesses, and/or to present other competent evidence concerning whether the TEL was a layoff." *Harmon v. Cincinnati*, Hamilton C.P. No. A 2003055 (Apr. 27, 2022).

{¶ 39} The city appealed to the First District Court of Appeals, arguing that the common pleas court lacked jurisdiction to hear the appeal. The court of appeals concluded that the common pleas court had jurisdiction under R.C. 2506.01 because Harmon and Beasley indicated that they were appealing the procedural aspects of their layoffs. 2023-Ohio-788, ¶ 18 (1st Dist.).

{¶ 40} Although the city's assignment of error was limited to the question whether the common pleas court had jurisdiction, *see id.* at ¶ 14, the court of appeals' decision exceeded the scope of that issue. Recall that the common pleas court had remanded the matter to the commission for a hearing limited to determining whether the TEL was a layoff. Presumably, if after that hearing the commission were to determine again that the TEL was not a layoff, then Harmon and Beasley would not be entitled to Rule 17 hearings. The court of appeals, however, hedged its bets. It decided that Harmon and Beasley could appeal to the commission under Rule 17, either because the TEL was a layoff or because they were entitled to enforce their rights under Section 5.1 of the parties' collective-bargaining agreement. 2023-Ohio-788 at ¶ 25. Notably, the latter justification for the ability of Harmon and Beasley to appeal to the commission was created out of

whole cloth by the court of appeals; Harmon and Beasley grounded their appeals to the commission and their arguments in the common pleas court in their contention that the TEL was a layoff.

{¶ 41} The majority opinion concludes that the common pleas court had jurisdiction under R.C. 2506.01. It also endorses the court of appeals' "either/or approach," stating, "Therefore, even if the TEL program does not qualify under Section 10.1 [of the collective-bargaining agreement] as a layoff, an employee may still have an individual right of action under Section 5.1 [of the collective-bargaining agreement], because participation in the program was a condition of employment." Majority opinion, ¶ 15. This approach is flawed. In my view, resolution of this appeal requires no more than an examination of the common pleas court's jurisdiction under R.C. 2506.01(A).

**The commission's decision was not appealable under R.C. 2506.01(A)**

{¶ 42} The common pleas court has jurisdiction to review "every final order, adjudication, or decision" of the commission, R.C. 2506.01(A). Only decisions resulting from quasi-judicial proceedings are appealable to the common pleas courts. *M.J. Kelley Co. v. Cleveland*, 32 Ohio St.2d 150 (1972), paragraph one of the syllabus. Quasi-judicial proceedings are proceedings that have requirements for notice, a hearing, and the opportunity for introduction of evidence. *Id.* at paragraph two of the syllabus; *see also State ex rel. Tremmel v. Erie Cty. Bd. of Elections*, 2009-Ohio-5773, ¶ 16 (holding that "a hearing resembling a judicial trial" was "a quasi-judicial proceeding"); *Rankin-Thoman, Inc. v. Caldwell*, 42 Ohio St.2d 436, 438 (1975) ("Quasi-judicial proceedings require notice, hearing and the opportunity for introduction of evidence.").

{¶ 43} The absence of quasi-judicial hallmarks from an administrative proceeding is not dispositive of the question whether a decision in the proceeding may be appealed to the common pleas court under R.C. 2506.01, however. Rather, the question is whether the commission was required to conduct a proceeding with

those hallmarks. *See State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 2014-Ohio-4364, ¶ 36 ("whether a proceeding is a quasi-judicial one . . . depends upon what the law requires the agency to do, not what the agency actually does"); *M.J. Kelley Co.* at paragraph two of the syllabus ("Proceedings . . . are not quasi-judicial where there is no requirement for notice, hearing and the opportunity for introduction of evidence.").

**{¶ 44}** Here, the majority acknowledges that "[a] quasi-judicial proceeding is a proceeding that requires notice, a hearing, and the opportunity to introduce evidence." Majority opinion at ¶ 18. It applies this rule to what it says should have happened before the commission. But the majority reaches the wrong conclusion about what the commission was required to do and thus arrives at the wrong result.

**{¶ 45}** In the majority's view, Harmon and Beasley were appealing layoffs because that is what Harmon and Beasley said they were doing. And according to the majority, because Harmon and Beasley said they were appealing layoffs, the commission should have held a hearing under Rule 17. But if simply labeling a governmental action a layoff—regardless of whether the action was a layoff under the terms of the parties' collective-bargaining agreement—was all that was needed to invoke Rule 17, then the stretch of Rule 17 would be boundless. Before Rule 17 may be invoked, a layoff must have occurred.

**{¶ 46}** As the majority observes, "there was some doubt regarding whether the [TEL] program was a layoff." Majority opinion at ¶ 23. That doubt needed to be resolved by the commission before it could move forward with a Rule 17 hearing. The pertinent question, then, is whether a rule required the commission to make that determination in a quasi-judicial proceeding.

**{¶ 47}** The answer is no. Only one other Cincinnati Civil Service Rule could plausibly apply to that determination: Cincinnati Civil Service Rule 2, Section 5 ("Rule 2, Section 5"). That rule provides, in its entirety:

19

Appearance before the Commission: Whenever an individual or group has a matter which requires or might require the consideration or decision of the Commission, such individual or group shall first inform the Secretary in writing, who shall make the necessary arrangements to bring such matters before the Commission in regular session.

Determining whether the TEL was a layoff is certainly "a matter which requires or might require the consideration or decision of the Commission," Rule 2, Section 5.

{¶ 48} Nothing in Rule 2, Section 5 contemplates any of the trappings of a hearing. Contrast Rule 2, Section 5 with Rule 17, which provides for notice of a hearing, Rule 17, Section 1(D); hearing proceedings, Rule 17, Section 1(E); and the opportunity to present evidence, Rule 17, Section (1)(E)(3). And at the conclusion of a Rule 17 hearing, the commission shall "render its judgment affirming, disaffirming or modifying the action of the appointing authority." Rule 17, Section 1(E)(5). That judgment is what is appealable under R.C. 2506.01. An appearance before the commission under Rule 2, Section 5, in contrast, is not subject to any requirements similar to those under Rule 17 and does not result in a judgment. Because it lacks any indicia of an adjudicative hearing, a Rule 2, Section 5 appearance is not a quasi-judicial proceeding resulting in a judgment from which an appeal may be taken. And no other Cincinnati Civil Service Rules required that the commission hold a quasi-judicial hearing to determine whether the TEL was a layoff.

{¶ 49} What the commission actually did confirms this conclusion. The commission provided Harmon and Beasley with the opportunity to make appearances under Rule 2, Section 5, during which they made their arguments that the TEL was a layoff. The commission entertained the arguments of Harmon and Beasley—as well as those of the city—during their appearances on July 16. But

again, the July 16 appearances lacked the trappings of a quasi-judicial proceeding. And as the majority notes, "the parties here agree that an appearance is not a quasi-judicial proceeding." Majority opinion at ¶ 21.

{¶ 50} The opportunities afforded Harmon and Beasley to appear before the commission were similar to the meeting that took place in *Mun. Constr. Equip. Operators' Labor Council*, 2014-Ohio-4364. In that case, we considered whether a city employee could have appealed from the civil-service commission's decision to deny his request for a disciplinary hearing. *Id.* at ¶ 1-2, 17. The commission had held a meeting to consider whether the employee was entitled to a disciplinary hearing. *Id.* at ¶ 17. And the commission had voted at the hearing against holding a disciplinary hearing. *Id.* We concluded that the employee could not have appealed the commission's decision. *Id.* at ¶ 32-37. We acknowledged that "whether a proceeding is a quasi-judicial one from which an R.C. 2506.01 appeal may be taken depends upon what the law requires the agency to do, not what the agency actually does." *Id.* at ¶ 36, citing *State ex rel. Hilltop Basic Resources, Inc. v. Cincinnati*, 2005-Ohio-6817, ¶ 15 (1st Dist.), and *In re Appeal of Howard*, 73 Ohio App.3d 717, 719 (10th Dist. 1991). And we noted that "[w]hen there is no requirement for notice, hearing, or an opportunity to present evidence, the proceedings are not quasi-judicial." *Id.* Likewise, an appearance under Rule 5, Section 2 did not require notice, hearing, or an opportunity to present evidence.

## Conclusion

{¶ 51} Beasley's and Harmon's right to appeal to the commission arose only if the TEL was a layoff. Nothing in the Cincinnati Civil Service Rules required that the commission hold a hearing to determine whether the TEL was a layoff. The commission's decision that the TEL was not a layoff was not the result of a quasi-judicial proceeding, so it was not appealable to the common pleas court. Because the majority sees it otherwise, I respectfully dissent.

————————————

Stokar Law, L.L.C., and Robb S. Stokar, for appellees.

Emily Smart Woerner, Cincinnati City Solicitor, and William C. Hicks, Assistant City Solicitor, for appellants.

Frost Brown Todd, L.L.C., Philip K. Hartmann, Alexander L. Ewing, and Thaddeus M. Boggs; and Garry Hunter, urging reversal for amicus curiae, Ohio Municipal League.

_____